MOORE v PRESTIGE PAINTING

Docket No. 249924. Submitted October 6, 2004, at Detroit. Decided
    October 12, 2004, at 9:15 a.m. Leave to appeal sought.

Jessica Douglas, on behalf of her daughter Jamie Lee Ann Douglas,
    filed in the Bureau of Worker's Disability Compensation an appli-
    cation for death benefits following Scott R. Moore's work-related
    death at Prestige Painting. In the application, the plaintiff alleged
    that Moore was the father of the child, that he did not support her,
    and that she and the child ceased living with Moore approximately
    six weeks before he was killed. A worker's compensation magistrate
    determined that Moore was the father of Jamie on the basis of the
    deposition testimony of Marco Scarpetta, Ph.D., who had reviewed
    the data related to blood samples drawn from the parties in Moore's
    unrelated paternity action. The magistrate then determined that
    although the child had not been residing with Moore at the time of
    his death, pursuant to MCL 418.331(b), a child under the age of
    sixteen, whether legitimate or not, is conclusively presumed to be
    dependent upon a parent. Accordingly, the magistrate awarded the
    plaintiff death benefits for the use and benefit of the child. Prestige
    Painting and the Construction Association of Michigan sought
    review by the Worker's Compensation Appellate Commission. The
    WCAC reversed the magistrate's decision, determining that under
    MCL 418.353(1)(a)(ii) only children under the age of sixteen and
    living with the employee at the time of death are conclusively
    presumed to be dependents and that the magistrate erroneously
    found that Scarpetta performed the testing on the blood samples
    when in fact he only reviewed the data provided to him. The
    plaintiff appealed by leave granted.

    The Court of Appeals *held*:

    1. The WCAC committed an error of law by applying the wrong
    statutory section and concluding that the child was not a depen-
    dent of the decedent. MCL 418.331(b) provides that children under
    the age of sixteen are conclusively presumed to be wholly depen-
    dent for support on a deceased employee. In contrast, MCL
    418.353(1)(a)(ii) applies only when the employee is totally or
    partially incapacitated. MCL 418.331(b) applies in this case where

the child was under the age of sixteen at the time of Moore's death and therefore is conclusively presumed to be wholly dependent on Moore at the time of his death.

2. To the extent the WCAC's opinion can be read as reversing the magistrate's finding of paternity, the WCAC misapplied it appellate role. The WCAC, when reviewing the admission of evidence, is to determine whether the magistrate abused his discretion. A magistrate is not strictly bound by the rules of evidence, but can give probative effect to evidence that reasonable and prudent men would rely on in the conduct of their affairs. Scarpetta's deposition testimony, which established the accuracy of the test results by describing the standard procedures followed by his laboratory, along with the identifying documents showing that those procedures were in fact followed, was probative evidence. The WCAC's finding that this evidence was inadmissible or unreliable was not based on a review for an abuse of discretion.

Reversed; magistrate's award reinstated.

WORKER'S COMPENSATION — DEATH BENEFITS — DEPENDENT MINORS.

A legitimate or illegitimate child of a deceased employee, if the child is under sixteen years of age at the time of the employee's death, is conclusively presumed to be wholly dependent on the employee for purposes of awarding death benefits (MCL 418.331[b]).

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *James N. McNally*), for the plaintiff.

*Law Office of Robert W. Macy, P.C.* (by *Robert W. Macy*), and *Daryl C. Royal* for the defendants.

Before: CAVANAGH, P.J., and FITZGERALD and METER, JJ.

PER CURIAM. Plaintiff-appellant Jessica Douglas appeals by leave granted from the order of the Worker's Compensation Appellate Commission (WCAC) reversing a magistrate's decision to award plaintiff five hundred weeks of benefits for the use and benefit of decedent's minor daughter Jamie Douglas. We reverse and reinstate the award of benefits.

It is undisputed that, in September 1998, decedent Scott Moore was killed in an incident that arose out of and in the course of his employment with Prestige Painting. The sole relevant issue before the WCAC was whether Jamie Douglas, born in April 1998, was entitled to benefits as decedent's dependent child.

Plaintiff testified that before Jamie's birth plaintiff had an exclusive romantic relationship with decedent and that decedent was Jamie's father. Jamie currently receives Social Security and military survivor's benefits as decedent's child. Plaintiff lived with decedent off and on during and after her pregnancy. Although plaintiff testified that decedent did not support his daughter, plaintiff and Jamie lived with decedent until approximately six weeks before he was killed. Plaintiff has married twice following decedent's death. Neither plaintiff's husband nor her ex-husband adopted Jamie Douglas.

Decedent filed a paternity action before his death. Pursuant to a court order in August 1998, blood was drawn from plaintiff, Jamie, and decedent and submitted for paternity testing.[1] The procedures used for the test were described in the deposition testimony of Marco Scarpetta, Ph.D., a biochemist and the director of Orchid Genescreen, formerly National Legal Laboratories. Scarpetta testified that Orchid Genescreen routinely performed genetic paternity testing on blood samples pursuant to court orders. While Scarpetta did not personally draw blood from the subjects, he described his laboratory's standard procedure to ensure the identity of the samples. At the time the blood is

---

[1] Decedent died five days before the scheduled paternity hearing. Plaintiff testified that the circuit court ultimately entered an order designating decedent as the father of Jamie Douglas, although the order was not entered into evidence in this action.

drawn, the parents identify each other. Each party presents his or her driver's license for identification and has his or her thumbprint taken. These procedures are followed to ensure that only authenticated samples are tested. Once the samples are taken, each sample is given an identification number. The testing is performed by the facility, and the results are sent to Scarpetta for review. Dr. Scarpetta reviewed the raw data and determined that there was a 99.96 percent probability that decedent was the father of Jamie Douglas.

The evidence presented at trial before the magistrate consisted of plaintiff's testimony, Dr. Scarpetta's deposition, the death certificate, and the police report regarding decedent's death. Defendants argued that Jamie should not be considered a dependent because she was not economically dependent on decedent. Defendants objected to the admission of Scarpetta's entire deposition on the grounds that it was hearsay, arguing that the blood was collected at one location and tested at another, with only the final results being reviewed by Scarpetta. The magistrate took defendants' objection under advisement and ultimately relied on the objected-to testimony without directly addressing the objection.

The magistrate found that decedent was the father of Jamie Douglas, noting that decedent had filed a paternity action, that blood samples were taken from the relevant parties, and that the blood test results indicated that decedent was Jamie's father. The magistrate's written opinion states:

> Mario [sic] Scarpetta, Ph.D., performed DNA testing on the specimens on September 3, 1998, establishing Scott Moore could not be excluded as the biological father of Jamie Douglas and the probability that he was her father was 99.96%. According to Ms. Douglas, Mr. Moore died five days before there was to be a trial on the paternity issue. I

find the testimony of Dr. Scarpetta sufficient to establish that Jamie Douglas is the daughter of Mr. Moore even though the issue was not adjudicated by the Circuit Court.

With regard to dependency, the magistrate noted that, under MCL 418.331(b), a child under the age of sixteen is conclusively presumed to be dependent on a parent. Citing this Court's opinion in *Bettelon v Metalock Repair Service*, 137 Mich App 448, 452-453; 358 NW2d 608 (1984), the magistrate noted that the conclusive presumption of dependency applied to both legitimate and illegitimate children. The magistrate rejected defendants' argument that Jamie Douglas was not a dependent of decedent because she did not live with her father or receive support from him before his death, pointing out that the *Bettelon* case failed to distinguish between the rights of posthumously born illegitimate children and those born before the death of a parent. The magistrate found that plaintiff was entitled to five hundred weeks of benefits for the use and benefit of Jamie Douglas as decedent's daughter.

Defendants appealed to the WCAC, raising two arguments: (1) the magistrate erred in admitting Dr. Scarpetta's deposition because the testimony did not set forth an adequate foundation for the admission of the paternity test and was based purely on hearsay, and (2) the magistrate committed an error of law by finding that Jamie Douglas would automatically be decedent's dependent if she was proven to be his child.

The commission addressed defendants' second argument first. Citing MCL 418.353(1)(a)(ii), the WCAC found that only children under sixteen living with the employee at the time of his death are conclusively presumed to be dependents. Since Jamie was not living with decedent at the time he was killed, and Jessica Douglas testified that she received no support from

decedent, the commission concluded that Jamie was neither a presumed dependent nor a factual dependent. On the basis of this finding, the commission reversed the award of benefits.

Although its resolution of the dependency issue rendered defendants' first issue moot, the commission addressed that argument "for the sake of judicial economy." The WCAC noted that the magistrate never addressed defendants' objections to the admission of Scarpetta's testimony. The WCAC concluded that the magistrate erroneously found that Scarpetta performed deoxyribonucleic acid (DNA) testing on the blood samples when Scarpetta merely reviewed the tests results and reached a decision regarding the data provided him. The commission noted that Scarpetta said that he could not be absolutely sure whether the samples provided by the laboratory were those of decedent, plaintiff, and Jamie Douglas. The commission's written opinion states:

> We are persuaded and agree with defendant that the magistrate erroneously stated that Dr. Scarpetta "performed DNA testing on the specimens on September 3, 1998 establishing Scott Moore could not be excluded as the biological father of Jamie Douglas . . . ." We are further persuaded that the magistrate's belief and reliance on that statement is not supported by competent, material, and substantial evidence on the whole record.

Despite that finding, the WCAC did not expressly reverse the magistrate's finding of paternity, but instead reversed the award of benefits on the basis of its analysis of the dependency issue, writing as follows:

> We carefully examined the record and while duly cognizant of the deference to be given to the decision of the magistrate find grounds for reversal upon application of MCL 418.353 to the found facts in this case.

Plaintiff raises two arguments on appeal. First, plaintiff argues that Jamie, as a child under sixteen years of age, is conclusively presumed to be decedent's dependent under the Worker's Disability Compensation Act, MCL 418.101 *et seq.*, and that the WCAC committed an error of law by applying the wrong section of the act. Second, plaintiff argues that the WCAC committed an error of law by concluding that the magistrate should have excluded Marco Scarpetta's deposition testimony.

In *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 703; 614 NW2d 607 (2000), our Supreme Court explained that judicial review of WCAC decisions should be very limited, quoting the following language from *Holden v Ford Motor Co*, 439 Mich 257, 269; 484 NW2d 227 (1992):

> "If it appears on judicial appellate review that the WCAC carefully examined the record, was duly cognizant of the deference to be given to the decision of the magistrate, did not 'misapprehend or grossly misapply' the substantial evidence standard, and gave an adequate reason grounded in the record for reversing the magistrate, the judicial tendency should be to deny leave to appeal . . . ."

The *Mudel* opinion explained that, while the commission reviews the magistrate's findings for compliance with the substantial evidence standard in accordance with MCL 418.861a(3), the judiciary's review of the commission's findings is more limited and solely designed to ensure the integrity of the administrative process. *Mudel, supra* at 699, 701. Under MCL 418.861a(13), the WCAC is required to conduct "a qualitative and quantitative analysis" of the evidence before the magistrate to "ensure a full, thorough, and fair review." In contrast, MCL 418.861a(14) provides that the "findings of fact made by the commission

acting within its powers, in the absence of fraud, shall be conclusive." The WCAC's findings of fact are reviewed under the "any evidence" standard: "[i]f there is any evidence supporting the WCAC's factual findings, and if the WCAC did not misapprehend its administrative appellate role in reviewing decisions of the magistrate, then the courts must treat the WCAC's factual findings as conclusive." *Mudel, supra* at 709-710. However, issues of law involved in a final order of the WCAC are still reviewed de novo for legal error. *Id.* at 697 n 3.

We find that the WCAC committed an error of law by applying the wrong statutory section and concluding that Jamie Douglas was not a dependent of decedent. Jamie Douglas is well under sixteen years of age and therefore is conclusively presumed to be decedent's dependent under MCL 418.331(b).

Whether someone is a dependent of a deceased employee is controlled by MCL 418.331, which states, in relevant part:

> The following persons shall be *conclusively presumed* to be wholly dependent for support upon a *deceased* employee:
>
> *  *  *
>
> (b) A child under the age of 16 years, or over 16 years of age if physically or mentally incapacitated from earning upon the parent with whom he or she is living at the time of the death of that parent. In the event of the death of an employee who has at the time of death a living child by a former spouse or a child who has been deserted by such deceased employee under the age of 16 years, or over if physically or mentally incapacitated from earning, such child shall be conclusively presumed to be wholly dependent for support upon the deceased employee, even though not living with the deceased employee at the time of death . . . . [Emphasis added.]

If an employee is totally or partially incapacitated, but not dead, MCL 418.353 controls whether a child is a dependent of the disabled employee. MCL 418.353(1)(a)(ii) provides:

> (1) *For the purposes of sections 351 to 361*, dependency shall be determined as follows:
>
> (a) The following shall be conclusively presumed to be dependent for support upon an injured employee:
>
> * * *
>
> (ii) A child under the age of 16 years, or over said age, if physically or mentally incapacitated from earning, living with his parent at the time of the injury of such parent. [Emphasis added.]

The WCAC erroneously applied the definition of a dependent provided by § 353(1)(a)(ii) as opposed to the somewhat different definition set forth by § 331(b). The language of § 353(1)(a)(ii) indicates that a child under sixteen years of age must be living with his or her parent at the time of the work-related injury in order to be presumed a dependent. However, a careful reading of MCL 418.331(b) shows that the conclusive presumption of § 331(b) applies to any child under sixteen years old. The absence of a comma between "earning" and "upon," in the first sentence of § 331(b), indicates that the requirement that the child be living with the employee at the time of the death applies only to children over sixteen years of age who are physically or mentally incapacitated from earning. Further, the later language of § 331(b) indicates that a living child by a former spouse is conclusively presumed dependent upon the employee if that child is under the age of sixteen. A parent is legally obligated to support both his legitimate and illegitimate offspring. *Bettelon, supra* at 452. To require payment of dependent benefits to the children of former spouses

(i.e., legitimate children) yet deny those benefits to illegitimate offspring would violate constitutional equal protection guarantees. *Id.* at 452-453.

With regard to plaintiff's second argument, we conclude that, to the extent the WCAC's opinion could be read as reversing the magistrate's finding of paternity, such a reversal was a misapplication of its appellate role. Whether to admit certain evidence is reviewed for an abuse of discretion. *People v Taylor*, 195 Mich App 57, 60; 489 NW2d 99 (1992). Worker's compensation magistrates are not strictly bound by the rules of evidence. MCL 418.841(6). In contested cases before an administrative agency, a fact-finder may admit and give probative effect to " 'evidence of a type commonly relied upon by reasonable, prudent men in the conduct of their affairs.' " *Rentz v Gen Motors Corp*, 70 Mich App 249, 253; 245 NW2d 705 (1976), quoting MCL 24.275. Here, Scarpetta's deposition testimony established the reliability of the test results by describing the standard procedures followed by his laboratory and identifying the documents showing that those procedures had been followed. Given that the magistrate was not bound by the rules of evidence, and given Scarpetta's testimony establishing the reliability of the test results, the WCAC, to the extent it found Scarpetta's testimony inadmissible or unreliable, did not review the magistrate's decision to admit this evidence for an abuse of discretion, but instead made its own, erroneous determination of admissibility.

Accordingly, we reverse the commission's opinion and order and reinstate the magistrate's order awarding plaintiff five hundred weeks of benefits for the use and benefit of decedent's minor daughter Jamie Douglas.

Reversed.