MOORE v PRESTIGE PAINTING

Docket No. 274252. Submitted December 12, 2007, at Detroit. Decided December 27, 2007, at 9:05 a.m. Leave to appeal sought.

Jessica Douglas, on behalf of her daughter Jamie Douglas, filed an application for death benefits in the Bureau of Worker's Disability Compensation following Scott R. Moore's work-related death at Prestige Painting. In the application, the plaintiff alleged that Moore was the child's father, that he did not support her, and that she and the child had ceased living with Moore approximately six months before his death. A workers' compensation magistrate determined that Moore was the child's father on the basis of the deposition testimony of Marco Scarpetta, Ph.D., who had reviewed the blood-sample data from the parties in Moore's unrelated paternity action. The magistrate then determined that, although the child had not been living with Moore at the time of his death, under MCL 418.331(b), a child under the age of 16, whether legitimate or not, is conclusively presumed to be dependent on a parent. Prestige Painting and the Construction Association of Michigan sought review in the Worker's Compensation Appellate Commission (WCAC). The WCAC reversed the magistrate's decision, determining that, under MCL 418.353(1)(a)(ii), only children under 16 who are living with the employee at the time of death are conclusively presumed to be dependents. The Court of Appeals, CAVANAGH, P.J., and FITZGERALD and METER, JJ., in an opinion per curiam, held that the WCAC committed an error of law by applying MCL 418.353(1)(a)(ii) instead of MCL 418.331(b), which provides that children under the age of 16 are conclusively presumed to be wholly dependent for support on a deceased employee. The Court also reversed the WCAC's ruling that Scarpetta's testimony was inadmissible because the WCAC had not reviewed the magistrate's decision to admit the testimony for an abuse of discretion. 264 Mich App 123 (2004). The defendants sought leave to appeal in the Supreme Court, which, in lieu of granting leave, vacated the decision of the Court of Appeals, stating that the first sentence of MCL 418.331(b) only confers a conclusive presumption of dependency on a child who is living with the parent at the time of the parent's death. The Supreme Court remanded the case to the WCAC to determine whether the plaintiff met her burden of

proving that the child was Moore's and, if so, whether the child was a conclusively presumed dependent under any other provision of MCL 418.331(b). 473 Mich 860 (2005). On remand, the WCAC affirmed the magistrate's determination of paternity and, noting that it was precluded from establishing dependency on the basis of the first sentence of MCL 418.331(b), ruled that the child was a dependent under the second sentence of that provision, which states that a child under 16 years of age who was deserted by the deceased employee is conclusively presumed to be wholly dependent for support on that deceased employee. After the Court of Appeals denied the defendants' application for leave to appeal the WCAC decision, the Supreme Court, in lieu of granting leave to appeal, remanded the case to the Court of Appeals for consideration, as on leave granted, of whether the WCAC erred in holding that Moore had deserted the plaintiff's daughter. 477 Mich 927 (2006).

The Court of Appeals *held*:

The WCAC erred in finding that Moore deserted his daughter because the record indicated that it was Douglas's decision to remove the child from Moore's residence and that Moore initiated proceedings to establish his paternity of the child. This evidence does not support a finding that Moore willfully, completely, and finally abandoned his daughter, as the dictionary definition of "desert" requires, despite Moore's failure to financially support his daughter in the weeks before his death. Whether the child was legitimate is irrelevant to the dependency inquiry.

Reversed and remanded for further proceedings.

WORKERS' COMPENSATION — DEATH BENEFITS — DEPENDENT MINORS — DESERTION.

To establish that a deceased employee had deserted his or her child before death, the evidence must indicate that the employee willfully, completely, and finally abandoned the child (MCL 418.331[b]).

*James N. McNally* for the plaintiffs.

*Robert W. Macy* (*Daryl Royal*, of counsel) for the defendants.

Before: SAAD, P.J., and OWENS and KELLY, JJ.

PER CURIAM. This case returns to this Court on remand from our Supreme Court, which has asked us to

determine "whether the Workers' Compensation Appellate Commission erred in holding that the decedent had 'deserted' the plaintiff's daughter, so as to make the daughter a conclusive dependent under the second sentence of MCL 418.331(b)." *Moore v Prestige Painting*, 477 Mich 927 (2006). We conclude that decedent Scott Moore did not desert his daughter, Jamie Douglas, and, as a result, Jamie was not a conclusive dependent pursuant to MCL 418.331(b).

## I. FACTS AND PROCEDURAL HISTORY

This case arises from the death of Scott Moore during the course of his employment as a painter with defendant Prestige Painting. Jessica Douglas, Moore's former girlfriend and Jamie's mother, initiated this action to recover workers' compensation death benefits from defendants on behalf of Jamie. See MCL 418.321. In her August 14, 2002, opinion, the magistrate recounted the factual background of this case as follows:

> There is no real dispute that Scott R. Moore died as a result of electrocution arising out of and in the course of his employment on September 27, 1998. An incident report filled out by the Oakland County Sheriff's Department reflected that Mr. Moore had been painting at Sycamore Creek Apartments in Orion, Michigan when a gust of wind caused him to lose control of an aluminum ladder he was carrying. The ladder made contact with electrical wires and Mr. Moore was electrocuted just before 4:00 pm and died shortly thereafter.
>
> [Douglas] testified she had an exclusive relationship with Scott Moore and lived with him off & on after she became pregnant. During the course of their relationship, Ms. Douglas worked as a paramedic with Concord EMS. She continued to live with Mr. Moore for weeks or months at a time following the birth of her daughter Jamie on April 22, 1998. Ms. Douglas returned to work part-time at

Concord EMS after Jamie was born. She testified she and
Mr. Moore stopped living together six weeks before he died.

Moore filed a complaint to determine Jamie's paternity
on May 29, 1998, presumably when the couple still lived
together. Douglas admitted that she moved from
Moore's home with Jamie about six weeks before he
died, which would have been in mid-August 1998.
Although Moore contributed to household expenses
when he and Douglas lived together, Douglas claimed
that Moore did not provide financial support for her or
Jamie after they left. Regardless, Douglas acknowl-
edged that Moore continued to be "a father" to Jamie in
the weeks before his death. Moore provided a deoxyri-
bonucleic acid (DNA) specimen for testing to determine
whether he was Jamie's father on August 25, 1998,
approximately one month before his death. The test
results indicated that the probability that Moore was
Jamie's father was 99.96 percent.[1]

The magistrate concluded that Moore was Jamie's
father. The magistrate's August 14, 2002, opinion
stated:

> The Workers' Compensation Board of Magistrates may
> make a determination of paternity relating to a child's
> claim for workers' compensation benefits. Mr. Moore filed a
> paternity complaint on May 29, 1998 in Wayne County
> Circuit Court. In connection with that action, blood
> samples were collected from Mr. Moore, Ms. Douglas and
> Jamie Douglas. Mario Scarpetta, Ph.D., performed DNA
> testing on the specimens on September 3, 1998, establish-
> ing [that] Scott Moore could not be excluded as the
> biological father of Jamie Douglas and the probability that
> he was her father was 99.96%. According to Ms. Douglas,
> Mr. Moore died five days before there was to be a trial on
> the paternity issue. I find the testimony of Dr. Scarpetta

---

[1] In their brief on appeal, defendants acknowledge that Moore was
Jamie's father.

sufficient to establish that Jamie Douglas is the daughter of Mr. Moore even though the matter was never adjudicated by the Circuit Court.

The magistrate then ruled that Jamie was entitled to workers' compensation death benefits. In so doing, the magistrate noted that Jamie's illegitimacy was of no consequence because, pursuant to *Bettelon v Metalock Repair Service*, 137 Mich App 448, 452; 358 NW2d 608 (1984), illegitimate children must be treated the same as legitimate children for purposes of awarding workers' compensation death benefits.

Defendants appealed the magistrate's decision to the Workers' Compensation Appellate Commission (WCAC). The WCAC reversed, ruling that pursuant to MCL 418.353(1)(a)(ii), "only children under 16 living with the employee at the time of injury are conclusively presumed to be dependents," and that because Jamie was not living with Moore at the time of his death, she was "not a conclusive dependent of Mr. Moore . . . ."[2] The WCAC also concluded that Jamie was not a "factual dependent" of Moore because she did not receive any financial support from Moore after Douglas and Jamie moved from Moore's home.

The WCAC also considered an argument raised by defendants regarding the admissibility of Scarpetta's testimony.[3] The WCAC concluded:

---

[2] MCL 418.353 pertains to conclusive presumptions of dependency made under MCL 418.351 to MCL 418.361, and MCL 418.353(1)(a)(ii), cited by the WCAC, provides that "[a] child under the age of 16 years . . . living with his parent at the time of the injury of such parent" is to be "conclusively presumed to be dependent for support upon an injured employee."

[3] The WCAC summarized defendants' arguments regarding this issue in its opinion on the matter. As the WCAC noted, defendants argued that although the magistrate found that Scarpetta performed DNA testing, the testimony actually indicated that Scarpetta conducted no tests, but

We are persuaded and agree with defendant[s] that the magistrate erroneously stated that Dr. Scarpetta "performed DNA testing on the specimens on September 3, 1998, establishing Scott Moore could not be excluded as the biological father of Jamie Douglas . . . [.]" We are further persuaded that the magistrate's belief and reliance on that statement is not supported by the competent, material, and substantial evidence on the whole record.

We carefully examined the record and[,] while duly cognizant of the deference to be given to the decision of the magistrate[,] find grounds for reversal upon application of MCL 418.353 to the found facts of this case.

Plaintiffs sought leave to appeal the WCAC's decision in this Court, which granted leave. On plenary review, this Court reversed the WCAC's finding that Jamie was not a dependent and reinstated the award of benefits. This Court stated:

The WCAC erroneously applied the definition of a dependent provided by § 353(1)(a)(ii) as opposed to the somewhat different definition set forth by § 331(b). The language of § 353(1)(a)(ii) indicates that a child under sixteen years of age must be living with his or her parent at the time of the work-related injury in order to be presumed a dependent. However, a careful reading of MCL 418.331(b) shows that the conclusive presumption of § 331(b) applies to any child under sixteen years old. The absence of a comma between "earning" and "upon," in the first sentence of § 331(b), indicates that the requirement that the child be living with the employee at the time of the death applies only to children over sixteen years of age who are

merely reviewed the Lumingraph, an x-ray film showing bands of DNA, and made a decision regarding the raw data provided by the lab. According to defendants, Scarpetta then determined whether the numbers the lab produced and provided were correct and determined, on the basis of the data, whether Moore could be excluded as Jamie's father. When asked if he was certain whether the samples provided by the lab belonged to Douglas, Jamie, and Moore, Scarpetta testified that he could not be sure.

physically or mentally incapacitated from earning. Further, the later language of § 331(b) indicates that a living child by a former spouse is conclusively presumed dependent upon the employee if that child is under the age of sixteen. A parent is legally obligated to support both his legitimate and illegitimate offspring. *Bettelon, supra* at 452. To require payment of dependent benefits to the children of former spouses (i.e., legitimate children) yet deny those benefits to illegitimate offspring would violate constitutional equal protection guarantees. *Id.* at 452-453. [*Moore v Prestige Painting*, 264 Mich App 123, 131-132; 689 NW2d 758 (2004), vacated 473 Mich 860 (2005).]

This Court also reversed the WCAC's decision regarding Scarpetta's testimony, stating:

[W]e conclude that, to the extent the WCAC's opinion could be read as reversing the magistrate's finding of paternity, such a reversal was a misapplication of its appellate role. . . . Here, Scarpetta's deposition testimony established the reliability of the test results by describing the standard procedures followed by his laboratory and identifying the documents showing that those procedures had been followed. Given that the magistrate was not bound by the rules of evidence, and given Scarpetta's testimony establishing the reliability of the test results, the WCAC, to the extent it found Scarpetta's testimony inadmissible or unreliable, did not review the magistrate's decision to admit this evidence for an abuse of discretion, but instead made its own, erroneous determination of admissibility. [*Id.* at 132.]

Defendants sought leave to appeal this Court's decision before the Supreme Court. On July 14, 2005, the Supreme Court issued the following order:

In lieu of granting leave to appeal, the decision of the Court of Appeals is vacated. The first sentence of MCL 418.331(b) confers a conclusive presumption of dependency only on a child who was living with the parent at the time of the parent's death. The matter is remanded to the Worker's Compensation Appellate Commission to deter-

mine whether plaintiff met her burden of proving that her daughter is the child of the decedent and, if so, whether the daughter is a conclusively presumed dependent under any other provision of MCL 418.331(b). [*Moore v Prestige Painting*, 473 Mich 860-861 (2005) (citation omitted).]

On remand, the WCAC affirmed the magistrate's determination of paternity. The WCAC explained:

Assuming, arguendo, that [the] law of the case [doctrine] would preclude this panel of the Commission from reinstating the DNA testimony as evidence of paternity, we will refrain from doing so. Instead we will look to the other evidence of paternity to make our determination.

We note that the magistrate recited in her opinion the fact that the child's mother testified that she had sexual relations with only Mr. Moore, the decedent, at the time of the child's conception. In this connection the magistrate did not reject this testimony. The decedent's admission in the paternity petition also serves as evidence of paternity. Plaintiff's exhibit #1, a court document, evidences that it was Mr. Moore who was the plaintiff in a paternity suit, trying to establish his rights.

Accordingly, we affirm the magistrate['s] determination pertaining to paternity, finding it supported by competent, material and substantial evidence on the whole record.

The WCAC then discussed whether Jamie was entitled to dependency benefits pursuant to MCL 418.331(b). First, the WCAC noted that the Supreme Court's July 14, 2005, order precluded the WCAC from conclusively establishing dependency in this case on the basis of the first sentence of MCL 418.331(b). The WCAC then explained:

We must consider the issue of desertion for the same reason we are not going to use the first sentence of Section 331(b) to award benefits to plaintiff; i.e., the Supreme Court told the Commission to look at the rest of Section 331(b) to determine "whether the daughter is conclusively

presumed dependent under any other provision of MCL 418.331(b).["] The only possible applicable provision under this directive is the second sentence of Section 331(b) which reads as follows:

"In the event of the death of an employee who has at the time of death a living child by a former spouse or a child who has been deserted by such deceased employee under the age of 16 years, or over if physically or mentally incapacitated from earning, such child shall be conclusively presumed to be wholly dependent for support upon the deceased employee, even though not living with the deceased employee at the time of death . . . [.]"

As indicated by defendants, desertion is not defined in the Workers' Compensation Act. Defendants would have the Commission use a definition of desertion found in the penal code which provides that if other sources adequately care for the child the abandoning parent is not guilty of desertion. We do not believe that such a definition of desertion is appropriate for socially remedial legislation providing for benefits for children of workers killed in work related accidents. An ordinary definition of desertion should be utilized to properly protect the innocent children of those killed in industrial accidents.

The American Heritage Second College Edition defines the word desert: "to forsake or leave, especially when most needed; abandon."

When a parent is attempting to establish paternity in court and at the same time fails to support the involved child, he is as much a deserter of his child as the father who leaves town and disguises his identity to avoid supporting his child born in wedlock. Here the mother testified that Scott Moore ceased his support of Jamie when they left his home six weeks before he died. Certainly if the daughter in the instant case was a legitimate child of the deceased she would be held to be a dependent.

The WCAC then noted that the *Bettelon* Court held that legitimate and illegitimate children of a deceased worker must be afforded the same treatment regarding

dependency status under the Worker's Disability Compensation Act. The WCAC concluded:

> Therefore, we believe that the second sentence of Section 331(b) must be interpreted to grant dependency status to Jamie Douglas. Such is true because where paternity can be established the illegitimate child should be treated the same as a legitimate child in determining dependency. Under the facts of this case if Jamie Douglas was legitimate she would enjoy dependency status so that as an illegitimate child she must be granted dependency status.
>
> To hold to the contrary is to treat legitimate and illegitimate children differently which is contrary to *Bettelon, supra*. Accordingly, the September 9, 2002 decision of [the magistrate] awarding benefits is affirmed.

Defendants then sought leave to appeal the WCAC's decision on remand, which this Court denied "for lack of merit in the grounds presented." *Moore v Prestige Painting*, unpublished order of the Court of Appeals, entered June 2, 2006 (Docket No. 267751). Defendants then sought leave to appeal in our Supreme Court. Our Supreme Court held:

> Pursuant to MCR 7.302(G)(1), in lieu of granting leave to appeal, we remand this case to the Court of Appeals for consideration, as on leave granted, of the question whether the Workers' Compensation Appellate Commission erred in holding that the decedent had "deserted" the plaintiff's daughter, so as to make the daughter a conclusive dependent under the second sentence of MCL 418.331(b). We do not retain jurisdiction. [*Moore, supra*, 477 Mich at 927.][4]

---

[4] Justice CORRIGAN's concerns with this case were highlighted in a concurrence to the remand order. Justice CORRIGAN questioned (1) the WCAC's reliance on family court documents not introduced into the record in this matter to make a finding regarding paternity, (2) the WCAC's finding that Moore "deserted" Jamie, and (3) the WCAC's reliance on *Bettelon*. *Moore, supra*, 477 Mich at 928-929.

## II. DEPENDENCY UNDER MCL 418.331

The WCAC must review the magistrate's decision under the "substantial evidence" standard, and we review the WCAC's findings of fact under the "any evidence" standard. *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 702-704; 614 NW2d 607 (2000). Our review begins with the WCAC's decision, not the magistrate's. *Id.* "Findings of fact made or adopted by the WCAC are conclusive on appeal, absent fraud, if there is any competent evidence in the record to support them." *Tew v Hillsdale Tool & Mfg Co*, 268 Mich App 399, 405; 706 NW2d 883 (2005). We review de novo "questions of law involved in any final order of the WCAC." *DiBenedetto v West Shore Hosp*, 461 Mich 394, 401; 605 NW2d 300 (2000). "[A] decision of the WCAC is subject to reversal if it is based on erroneous legal reasoning or the wrong legal framework." *Id.* at 401-402.

The issue presented to us on appeal is whether Jamie is a conclusive dependent of Moore under the second sentence of MCL 418.331(b). MCL 418.331 states in pertinent part:

> The following persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee:
>
> \* \* \*
>
> (b) A child under the age of 16 years, or over 16 years of age if physically or mentally incapacitated from earning upon the parent with whom he or she is living at the time of the death of that parent. In the event of the death of an employee who has at the time of death a living child by a former spouse or a child who has been deserted by such deceased employee under the age of 16 years, or over if physically or mentally incapacitated from earning, such

child shall be conclusively presumed to be wholly dependent for support upon the deceased employee, even though not living with the deceased employee at the time of death and in all cases the death benefit shall be divided between or among the surviving spouse and all the children of the deceased employee, and all other persons, if any, who are wholly dependent upon the deceased employee, in equal shares the surviving spouse taking the same share as a child.

According to the statute, if a deceased employee deserted a child under 16 years of age, that child is "conclusively presumed to be wholly dependent for support upon the deceased employee" and, therefore, would be entitled to workers' compensation death benefits. Specifically, our Supreme Court asks us on remand to determine whether Jamie is "a child who has been deserted by" Moore and, therefore, a conclusive dependent of Moore pursuant to that provision of the statute.

As the WCAC noted, the word "deserted" is not defined in the Worker's Disability Compensation Act, and we have found no caselaw interpreting the term as used in MCL 418.331(b). To resolve the issue, the WCAC consulted a dictionary to define the word "desert." Although the WCAC acted properly in consulting a dictionary, see, e.g., *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002), we disagree with the WCAC's application of that dictionary definition to the facts of this case.

*Random House Webster's College Dictionary* (1997) defines "desert," in part, as "to leave (a person, place, etc.) without intending to return," and "to fail (someone) at a time of need." In addition, "desertion" is defined, in part, as "willful abandonment of a spouse, dependent children, etc., in violation of legal or moral obligations."

Here, the WCAC found that Moore "deserted" Jamie because he did not offer financial support to Jamie in the six weeks before his death. However, the dictionary definitions of the words "desert" and "desertion" connote an intent to abandon, as well as a sense of finality. In fact, the WCAC defined "desert," in part, as akin to "abandonment." According to *Random House Webster's College Dictionary*, "abandon" is defined, in part, as "to leave completely and finally; forsake utterly; desert: *to abandon a child; to abandon a sinking ship*." (Emphasis in original.) In this case, the record does not support a finding that Moore intended to completely abandon Jamie and forsake any further contact or support obligation. Specifically, the evidence indicated that Moore did not leave Douglas and Jamie; instead, Douglas moved herself and Jamie from Moore's residence. Also, Douglas testified that after she and Jamie moved from Moore's house, although Moore was not *financially* supportive, he "was a father to [Jamie]." Further, Douglas testified that before Moore's death, he initiated paternity proceedings. Notably, Moore provided a DNA sample for testing to determine Jamie's paternity approximately one month before his death, *after* Douglas claimed that she and Jamie moved from Moore's home. Because Moore lived with Jamie and Douglas after Jamie's birth and continued to be "a father" to Jamie after Jamie and Douglas moved from Moore's house, we assume that Moore initiated the paternity proceedings to establish his paternity.[5] Further, Moore's continued pursuit of paternity after Douglas and Jamie moved

---

[5] The WCAC definitively stated that Moore filed the paternity suit to establish his paternity. In support of this statement, the WCAC cited "Plaintiff's exhibit #1, a court document." However, Plaintiff's Exhibit 1 at trial was Moore's death certificate. As Justice CORRIGAN noted in her concurrence with the remand order, it appears that in making this statement the WCAC relied on a court document that was not part of the

from his home, as demonstrated by his provision of a DNA sample for a paternity test, indicated his continued desire to establish a paternal relationship with Jamie after the point when Douglas claimed he allegedly deserted Jamie. The record does not support a finding that Moore willfully, completely, and finally abandoned Jamie. As a result, the record as a whole does not support a finding that Moore "deserted" Jamie.

Analyzed differently, the WCAC's factual findings must be deemed conclusive in the absence of fraud where there is "any competent evidence" to support them. *Tew, supra* at 405. "Competent evidence" has been defined as " '[t]hat which the very nature of the thing to be proven requires . . . .' " *Goff v Bil-Mar Foods, Inc (After Remand)*, 454 Mich 507, 514 n 5; 563 NW2d 214 (1997), overruled on other grounds in *Mudel, supra*, quoting Black's Law Dictionary (6th ed). In this case, the "thing to be proven"—that Moore "deserted" Jamie—requires an intent on Moore's part to willfully, completely, and finally abandon Jamie. The evidence cited by the WCAC, i.e., Moore's lack of financial support for six weeks before his death, was not "competent" to support the finding of desertion because it only pertains to one aspect of Moore's involvement in Jamie's life, and because six weeks of nonsupport is insufficient to establish that even the lack of financial support was permanent. Accordingly, the WCAC erred in finding that Moore "deserted" Jamie.

In addition, the WCAC's discussion of legitimacy and citation to *Bettelon* are unnecessary and improper. In *Bettelon, supra* at 453, this Court reversed the ruling of the Workers' Compensation Appeal Board (WCAB) that

---

record below. Consequently, we choose not to incorporate the WCAC's statement in this regard into our analysis.

the conclusive presumptions of MCL 418.331(b) did not apply to illegitimate children on equal protection grounds, stating, "A child may be a dependent of his or her father whenever paternity can be established. Where paternity is found, we hold that an illegitimate child must be treated no differently from a legitimate child in determining dependency." The *Bettelon* Court then concluded, "[T]he presumptions of dependency to be applied by the WCAB shall be the same for an unacknowledged illegitimate child as those for a legitimate or acknowledged illegitimate child." *Id.* at 455.

*Bettelon* simply holds that the conclusive presumptions in MCL 418.331(b) must apply equally to both legitimate and illegitimate children. Therefore, *Bettelon* is only relevant in this case if there is a conclusive presumption in the second sentence of MCL 418.331(b) that applies to legitimate children, but not to illegitimate children. Here, the WCAC stated that "[u]nder the facts of this case if Jamie Douglas was legitimate she would enjoy dependency status so that as an illegitimate child she must be granted dependency status," and that "[t]o hold to the contrary is to treat legitimate and illegitimate children differently which is contrary to *Bettelon, supra.*" However, the second sentence of MCL 418.331(b) makes no specific mention of legitimacy, and the WCAC failed to explain how the application of MCL 418.331(b) might apply differently depending on the legitimacy of the child. In our initial opinion in this case, this Court held:

> Further, the later language of § 331(b) indicates that a living child by a former spouse is conclusively presumed dependent upon the employee if that child is under the age of sixteen. A parent is legally obligated to support both his legitimate and illegitimate offspring. *Bettelon, supra* at 452. To require payment of dependent benefits to the children of former spouses (i.e., legitimate children) yet

> deny those benefits to illegitimate offspring would violate
> constitutional equal protection guarantees. *Id.* at 452-453.
> [*Moore, supra,* 264 Mich App at 131-132.]

The second sentence of MCL 418.331(b) provides that a "living child by a former spouse" is a conclusively presumed dependent. However, that provision makes no mention of legitimacy, and under the plain language of the statute, a living child conceived and born to a former spouse after the parents divorced, although not presumptively "legitimate," would be entitled to benefits.[6] In addition, as noted by Justice CORRIGAN in concurring with our Supreme Court's most recent remand order, under that provision, "even if plaintiff and Moore were married when Jamie was born and remained married until Moore died, Jamie would not be a conclusive dependent under MCL 418.331(b) unless Moore 'deserted' her." *Moore, supra,* 477 Mich at 929. In other words, we decline to equate "a living child by a former spouse" with a "legitimate" child, and note that even a "legitimate" child is not necessarily entitled to benefits under the second sentence of MCL 418.331(b). *Bettelon* is irrelevant to the analysis of whether Moore "deserted" Jamie.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[6] A child conceived or born during a marriage is presumed "legitimate." See *Aichele v Hodge,* 259 Mich App 146, 156-158; 673 NW2d 452 (2003).