*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* WASHINGTON/COE, Minors.

UNPUBLISHED
February 22, 2024

No. 366069
Wayne Circuit Court
Family Division
LC No. 2019-000996-NA

Before: GADOLA, C.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating her parental rights to JMW, JHW, and PMC (collectively "the children"), pursuant to MCL 712A.19b(3)(a)(*ii*) (desertion of child for 91 or more days and custody not sought),[1] (c)(*i*) (conditions leading to adjudication continue to exist), (c)(*ii*) (failure to rectify other conditions), (j) (reasonable likelihood of harm if returned to parent's home), and (k)(*i*) (abandonment of a young child and reasonable likelihood of future harm if returned to parent). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

The minor children who are the subject of this appeal were removed from respondent's on May 20, 2019, after they were found alone in what was described as a "filthy house." Later that day, petitioner filed a petition seeking temporary custody of the children. A Children's Protective Services (CPS) worker testified it was contrary to the welfare of the children to be returned to respondent because respondent did not provide proper care for her children and respondent's house was unsuitable. The trial court authorized the petition. Subsequently, respondent admitted she had an unsuitable, filthy house, left the children without proper supervision, had untreated mental

---

[1] During the November 7, 2022 termination hearing, the referee found that there were grounds to terminate respondent's parental rights under MCL 712A.19b(3)(a)(*ii*). However, the November 8, 2022 order terminating respondent's parental rights reflects that respondent's parental rights were terminated under MCL 712A.19b(3)(a)(*i*). As the children's mother, respondent is identifiable. Thus, it appears that the trial court made a clerical error when it entered an order terminating respondent's parental rights under MCL 712A.19b(3)(a)(*i*).

health issues, gave birth to a child who tested positive for cocaine, tested positive for cocaine at that time she gave birth, and was currently in an inpatient rehabilitation facility because of her cocaine use. Respondent admitted that each of those circumstances negatively affected her ability to properly parent. Based on those admissions, the trial court took jurisdiction of the children and ordered respondent to follow a treatment plan that included parenting classes, individual therapy, substance abuse treatment, weekly drug screens, and a psychological evaluation. Respondent was also required to obtain and maintain suitable housing and a legal source of income, and to visit the children weekly.

Nearly four years after the children were removed, respondent had failed to complete or benefit from her treatment plan. Respondent participated in some services, but showed no benefit therefrom and provided no support for her children. Respondent missed nearly 70% of the ordered visits (she missed 103 of the 149 scheduled visits), at times going as long as 91 or more days between visits. Respondent failed to do most of her drug screening, did not attend substance abuse counseling, continued to abuse substances, did not attend therapy or take medication for her mental health issues, never provided proof she obtained suitable housing, missed many court hearings, was caught stealing and was arrested for prostitution and drug possession, and became involved in a relationship replete with incidents of domestic violence. The trial court found statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(a)(*ii*), (c)(*i*), (c)(*ii*), (j), and (k)(*i*). The trial court also found it was in the children's best interests to terminate respondent's parental rights because respondent failed to visit the children regularly, obtain suitable housing, or overcome her substance abuse issues.

## II. ANALYSIS

In her appeal, respondent argues there was not clear and convincing evidence to support termination of her parental rights under MCL 712A.19b(3)(a)(*ii*), (c)(*i*), (c)(*ii*), (j), or (k)(*i*) because respondent had made substantial progress toward completing her treatment plan and was continuing to rectify the issues therein.

"We review for clear error a trial court's finding of whether a statutory ground for termination has been proven by clear and convincing evidence. A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Richardson*, 329 Mich App 232, 251; 961 NW2d 499 (2019) (citation omitted).

Parents have a "fundamental right to direct the care, custody, and control" of their children. *In re Ferranti*, 504 Mich 1, 21; 934 NW2d 610 (2019). "To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

Pursuant to MCL 712A.19b(3)(a)(*ii*), a court may terminate parental rights if it finds clear and convincing evidence that "[t]he child's parent has deserted the child for 91 or more days and has not sought custody of the child during that period." Relative to this finding, the guardian ad litem agrees with respondent that the trial court erred by finding a statutory ground for termination under MCL 712A.19b(3)(a)(*ii*) because respondent had contact with her children after the petition

was filed and participated in some of the hearings. We conclude that termination was improper under MCL 712A.19b(3)(a)(*ii*) because the record does not clearly indicate there was ever a stretch of 91 days where respondent neglected to visit her children *and* failed to seek custody of them. The trial court did not identify when this window allegedly took place, and there is no evidence of such in the record. During closing argument, petitioner's attorney stated termination was proper under MCL 712A.19b(3)(a)(*ii*) because respondent had not seen her children in more than 91 days, but did not mention respondent's efforts to gain custody during that time. Therefore, the trial court clearly erred by finding termination was proper under MCL 712A.19b(3)(a)(*ii*).

Pursuant to MCL 712A.19b(3)(c)(*i*), a court may terminate parental rights if the respondent was in a proceeding pursuant to this chapter, "182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . [t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." Here, respondent had nearly four years to rectify the issues which led to the adjudication before her parental rights were terminated. The conditions that led to the adjudication were respondent's unsuitable house, improper supervision of the children, untreated mental health issues, and drug abuse. The trial court found respondent failed to rectify any of those conditions. We glean nothing from the record evidence presented to us to dispute this finding.

Rather, the record clearly reveals that respondent did not rectify her inappropriate housing situation. When the children were removed, respondent's home was unsuitable and dirty. Respondent admitted that her house was filthy and unsuitable for her children. Throughout the duration of the case, respondent never made it possible for petitioner to inspect her living environment. The foregoing indicates respondent failed to show she ever rectified her housing situation.

Additionally, the record indicates that respondent's failure to properly supervise her children was another issue that led to the adjudication and her behavior during visits indicated she continued to struggle with properly supervising her children. Early on in the case, respondent was reportedly behaving appropriately during visits. However, at the next dispositional review hearing, the caseworker testified respondent had to be told multiple times to end phone calls during her visit, and respondent ultimately ended the visit early. During one visit, respondent became upset at the children, and she slept through another visit. Though she completed parenting classes, respondent did not demonstrate an ability to appropriately parent and supervise her children. Furthermore, as previously indicated, respondent's compliance with parenting times was "extremely spotty." Accordingly, we conclude respondent failed to rectify her issue of inappropriate supervision.

Respondent also failed to remedy her mental health issues. Respondent was diagnosed with bipolar disease, anxiety, PTSD, schizophrenia, and trichotillomania, but she was not compliant with taking her prescription medication. Respondent admitted that she had mental health issues that were not being properly treated. Respondent's mental health needs were not being met at the time of the termination hearing. Therefore, the trial court did not err by finding respondent failed to rectify her mental health issues.

Throughout the duration of the case, respondent tested positive for cocaine and marijuana. Accordingly, the trial court ordered respondent to participate in random drug screens and substance abuse therapy. Respondent missed 102 of 104 drug screens. Respondent never completed any of her substance abuse counseling. Respondent admitted to abusing drugs, including cocaine, and admitted her drug use negatively affected her parenting ability. Respondent was even arrested on a drug-related offense in 2019. Respondent overdosed on drugs in December, 2021. Accordingly, since respondent failed to participate in the drug screens or otherwise show she had resolved her substance abuse issue, she failed to show her substance abuse issue had been rectified or likely would be in the near future. See *In re Atchley*, 341 Mich App 332, 339; 990 NW2d 685 (2022) ("[A] respondent-parent must both participate in services and demonstrate that they sufficiently benefited from the services provided.") (quotation marks and citation omitted). In summary, respondent failed to rectify any of the issues which led to the adjudication. Therefore, the trial court did not err by terminating respondent's parental rights under MCL 712A.19b(3)(c)(*i*).

Pursuant to MCL 712A.19b(3)(c)(*ii*), a court may terminate a parent's parental rights if the following is established:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . :
>
> * * *
>
> (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Again, the guardian ad litem agrees with respondent that termination was improper under MCL 712A.19b(3)(c)(*ii*) because the record did not substantiate the existence of any additional conditions causing the children to come within the trial court's jurisdiction. When the referee found termination was proper under MCL 712A.19b(3)(c)(*ii*), he did not identify what other issues existed. When the trial court terminated respondent's parental rights, it only stated that respondent failed to have meaningful contact with her children or complete her treatment plan. Petitioner argued the basis for the trial court terminating respondent's parental rights under MCL 712A.19b(3)(c)(*ii*) was respondent's failure to obtain appropriate housing. However, respondent's housing issue was part of the trial court's original assumption of jurisdiction, making that condition inapplicable to an analysis under MCL 712A.19b(3)(c)(*ii*).

Nevertheless, the assertions of respondent and the guardian ad litem are incorrect statements of law because termination was proper under MCL 712A.19b(3)(c)(*ii*) due to respondent's failure to comply with the parts of her treatment plan that were separate from the issues that led to the adjudication. A respondent's failure to comply with their treatment plan and make the changes necessary to be reunited with their children support termination under MCL 712A.19b(3)(c)(*ii*). *In re Sours*, 459 Mich 624, 640; 593 NW2d 520 (1999). In her treatment plan,

-4-

respondent was ordered to visit her children weekly. As previously stated, respondent missed 103 out of 109 visits. Thus, she clearly failed to comply with her treatment plan. Since respondent violated a condition of her treatment plan that was not a basis for the trial court's assumption of jurisdiction, we conclude the trial court did not clearly err when it found termination was proper under MCL 712A.19b(3)(c)(*ii*).

Pursuant to MCL 712A.19b(3)(j), a court may terminate parental rights if it finds clear and convincing evidence that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Exhibiting behavior that would put a child at a risk of harm is sufficient to justify terminating parental rights under MCL 712A.19b(3)(j). *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). The trial court did not clearly err by finding a statutory ground to terminate respondent's parental rights under MCL 712A.19b(3)(j) because, as discussed earlier with regard to MCL 712A.19b(3)(c)(*i*) and (c)(*ii*), respondent failed to comply with the terms of her treatment plan. See *In re Kaczkowski*, 325 Mich App 69, 77; 924 NW2d 1 (2018) (holding that failure to comply with a treatment plan is evidence that the child will be harmed if returned to the parent's home).

Concluding that there was a reasonable likelihood that the children would be harmed if returned to respondent's home was also not clearly erroneous because of respondent's continued drug use, her mental health issues and her inability to remain out of jail. The use of powerful drugs, like cocaine, could debilitate a caregiver from providing proper care to her child. Respondent admitted that her drug use negatively affected her ability to care for her children. Further, respondent's failure to address her mental health issues also indicated the children would likely be harmed if returned to respondent. *Kaczkowski*, 325 Mich App at 78. Finally, as discussed earlier, respondent failed to demonstrate she had appropriate housing, which could also lead to the children being harmed if they were returned to respondent.

Pursuant to MCL 712A.19b(3)(k)(*i*), a court may terminate parental rights if it finds clear and convincing evidence that the parent abandoned the young child or sibling, and "there is a reasonable likelihood that the child will be harmed if returned to the care of the parent[.]" The guardian ad litem also agrees with respondent that termination was improper under MCL 712A.19b(3)(k)(*i*) because there was insufficient evidence showing respondent abandoned her children.

When analyzing MCL 712A.19b(3)(k)(*i*), this Court defined abandon as "to leave completely and finally; forsake utterly . . . ." *Moore v Prestige Painting*, 277 Mich App 437, 449; 745 NW2d 816 (2007). When the children were taken into custody, they were living with respondent. Though respondent was inconsistent with visiting her children throughout the case, she still attended 46 visits and even brought snacks with her, albeit sugary ones. Therefore, it is evident that respondent never manifested an intent to leave her children completely or utterly forsake them. Accordingly, we conclude the trial court clearly erred by finding statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(k)(*i*). However, we also conclude that the trial court did not clearly err in finding statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*) and (j).

Respondent also argues the trial court erred by finding it was in the children's best interests to terminate respondent's parental rights because respondent was complying with her treatment

plan, continuing to work on her treatment plan, and had a special bond with her children. The record does not support any of these assertions made by respondent.

We review a "trial court's determination regarding the children's best interests" for clear error. *White*, 303 Mich App at 713. Clear error exists when the reviewing court has a firm and definite conviction that a mistake was made. *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020).

"Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *In re Keillor*, 325 Mich App 80, 93; 923 NW2d 617 (2018) (citation omitted). "Best interests are determined on the basis of the preponderance of the evidence." *Id*. (citation omitted). The trial court should consider all of the evidence when determining whether it is in the child's best interests to terminate parental rights. *White*, 303 Mich App at 713. The trial court should consider "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. (citation omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714. "A parent's substance-abuse history is also relevant to whether termination is in the child's best interests." *In re Rippy*, 330 Mich App 350, 361; 948 NW2d 131 (2019) (citation omitted).

The trial court's finding, that it was in the children's best interests to terminate respondent's parental rights, was not clearly erroneous because, as discussed earlier, respondent failed to rectify the issues which led to the trial court taking jurisdiction of the children, did not rectify the other issues the trial court ordered respondent to rectify, and there was a reasonable likelihood the children would be harmed if returned to respondent. Overall, respondent's failure to comply with her case service plan suggests it would be in the children's best interests to terminate respondent's parental rights. See *White*, 303 Mich App at 713 (holding a respondent's degree of compliance with her treatment plan should be considered in a best-interests analysis).

Respondent's failure to submit to drug screens and continued abuse of controlled substances also supported the trial court's finding that it was in the children's best interests to terminate respondent's parental rights. See *Rippy*, 330 Mich App at 361 (holding a respondent's history of substance abuse suggests it would be in the child's best interests to terminate the respondent's parental rights). Additionally, respondent's failure to obtain stable and suitable housing weighed in favor of terminating her parental rights. See *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012) (holding a trial court should consider whether a parent can provide a child with a stable environment when making a best-interests finding).

When the children were removed, respondent had left them home alone in a filthy house, clearly demonstrating her lack of parenting skills and improper supervision. Though respondent participated in parenting classes, she provided no proof she benefitted from the parenting classes. See *White*, 303 Mich App at 713 (holding the parent's parenting ability is a factor the trial court should consider when making a best-interests finding); see also *Atchley*, 341 Mich App at 339 ("[A] respondent-parent must both participate in services and demonstrate that they sufficiently benefited from the services provided.") (quotation marks and citation omitted). Respondent's

failure to address her mental health issues also indicated the children would likely be harmed if returned to her. See *Kaczkowski*, 325 Mich App at 78 (holding a parent's ongoing mental health issues and refusal to take medication evidences the child would likely be harmed with that parent). Additionally, respondent sent the foster parent a text solicitation for sex with nude pictures in March, 2022, and was caught stealing and arrested for drug possession and prostitution in the summer of 2019. Such lewd and criminal behaviors also indicated it was in the children's best interests to not be placed with respondent. Respondent's involvement in a domestic violence relationship also weighed in support of termination. See *White*, 303 Mich App at 714. Stating the obvious, during the nearly four-year pendency of this matter, respondent displayed little, if any, effort to reunite with her children. Coupled with the fact that she missed nearly 70% of her scheduled visits with her minor children is not demonstrative of a parent who has a bond with their children.

As to respondent's lack of a bond with the minor children, the caseworker opined there was no bond between respondent and her children because of respondent's many missed visits. Respondent missed 103 of the 149 scheduled visits with her children, and was sometimes distracted during the visits or ended them early. While it is true that JMW gave a thumbs up when she was asked about her feelings regarding respondent, JMW also gave a thumbs up with regard to the foster parent. Additionally, JMW seemed to believe respondent did not love her and her siblings because she rarely visited them, evidencing a breakdown in JMW's bond with respondent. Though JHW was happy to see respondent, he identified the foster parent as his real parent, and respondent as the foster parent.

We recognize that a child's bond with the parent is an important best-interests factor. See *White*, 303 Mich App at 713. However, in this matter, the reality is that these children had not lived with respondent in nearly four years by the time of the termination hearing and did not have regular contact with respondent over those years. Even assuming a bond existed, the record clearly reveals it could not be characterized as a strong one.

When respondent did visit, the children often exhibited negative behaviors afterwards. The children experienced anxiety and resorted to behaviors like food hoarding. In general, the children were frightened and misbehaved after visits with respondent. Further, respondent's outburst at the last visit upset each of her other children. The negative effect the children experienced after visits with respondent weighed in support of terminating respondent's parental rights.

Finally, the children needed permanency, stability, and finality—things they would seemingly only get if respondent's parental rights were terminated. See *White*, 303 Mich App at 713 (holding that a child's need for permanency, stability, and finality should be considered when making a best-interests finding). The foster parent's willingness to adopt the children weighed in favor of terminating respondent's parental rights. See *id*. at 714 (holding that the possibility of adoption is a factor to consider in a best-interests analysis). Considering the entirety of the record in this case, we conclude the trial court did not clearly err when it found termination was in the children's best interests.

Affirmed.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra