AMERICAN HOME ASSURANCE COMPANY
v MICHIGAN CATASTROPHIC CLAIMS ASSOCIATION

ACE AMERICAN INSURANCE COMPANY
v MICHIGAN CATASTROPHIC CLAIMS ASSOCIATION

Docket Nos. 287153 and 292539. Submitted April 13, 2010, at Detroit. Decided June 15, 2010, at 9:05 a.m.

American Home Assurance Company brought an action in the Oakland Circuit Court against the Michigan Catastrophic Claims Association (MCCA), seeking indemnification pursuant to MCL 500.3104(2)(c) for personal protection insurance (PIP) benefits it paid in excess of $325,000 under a no-fault policy issued to the Cassens Transport Company. The MCCA moved for summary disposition, contending that American Home was not entitled to indemnification because its "ultimate loss" did not meet the statutory threshold of $325,000. According to the MCCA, because Cassens had paid a $500,000 deductible, American Home's actual loss was only $205,863. The MCCA further asserted that even if American Home's losses had initially exceeded the statutory threshold for indemnification, once American Home received the deductible payment, American Home would have been required under article X, § 10.06 of the MCCA's plan of operation to transfer the deductible payment to the MCCA until American Home sustained an ultimate loss exceeding $325,000. American Home also requested summary disposition. American Home contended that the MCCA's indemnification obligation had been triggered irrespective of the deductible paid by Cassens, and further asserted that § 10.06 was inapplicable because Cassens was not a "third party" under that section. The court, Michael D. Warren, Jr., J., granted the MCCA's motion for summary disposition, concluding that the MCCA was permitted under MCL 500.3104 to consider the deductible paid by a policyholder in calculating the insurer's ultimate loss, that an insured is a third party within the meaning of § 10.06, and that American Home's ultimate loss was only $205,863 when its receipt of the deductible was properly considered—an amount that did not meet the applicable statutory threshold for indemnification. American Home appealed (Docket No. 287153).

ACE American Insurance Company (AAIC) brought an action in the Oakland Circuit Court against the MCCA, seeking a declaratory

judgment that it was entitled to indemnification pursuant to MCL 500.3104(2)(e) for PIP benefits it paid in excess of $375,000 under a no-fault policy issued to Waste Management, Inc. The MCCA moved for summary disposition, contending that its statutory indemnification obligation had not been triggered by an ultimate loss exceeding the applicable statutory threshold given AAIC's decision not to enforce a large deductible provision in Waste Management's insurance policy and additional provisions that rendered Waste Management responsible for paying a significant portion of any PIP claim arising under the policy. AAIC also moved for summary disposition, contending that the MCCA was obligated to indemnify it without consideration of Waste Management's contractual obligations. The court, Mark Goldsmith, J., granted summary disposition in favor of the MCCA, concluding that AAIC's ultimate loss was the actual financial detriment it suffered and that AAIC's financial detriment did not include the amount that it was contractually entitled to receive from Waste Management, but was limited to AAIC's share of the claim exceeding the statutory threshold of $375,000. AAIC appealed (Docket No. 292539). The appeals were consolidated.

The Court of Appeals *held*:

1. The MCCA is an indemnitor for its member insurers in the event of catastrophic injury claims. Its duty to indemnify member insurers is triggered by different threshold amounts, which are based on the date the insurance policy was issued or renewed. Under MCL 500.3104(2), when indemnification is triggered, the MCCA must pay 100 percent of the insurer's "ultimate loss" in excess of the threshold amount.

2. MCL 500.3105(1) requires member insurers to pay PIP benefits without regard to the existence of a deductible clause in the insurance policy. Accordingly, an insurer's ultimate loss includes amounts the insurer received from the policyholder as a deductible. Thus, American Home's ultimate loss was $705,863.60, which exceeded the applicable statutory threshold for indemnification, and the trial court erred by concluding otherwise.

3. The trial court, however, ultimately reached the correct result in Docket No. 287153 because under article X, § 10.06 of the MCCA's plan of operation, a member insurer must transfer to the MCCA any amount it recovers from a third party for which the insurer had already been reimbursed by the MCCA. Thus, had the MCCA indemnified American Home for its losses exceeding the applicable statutory threshold, it would have been entitled to receive that amount back in reimbursement from the $500,000 American Home received from Cassens. Cassens was a third party under § 10.06 because the plan of operation addressed the rela-

tionship between the MCCA and its member insurers rather than the contractual relationship between an insurer and its policyholders. Because the parties' obligations canceled each other out, the trial court properly granted summary disposition to the MCCA, having reached the right result, although for the wrong reason.

4. AAIC's ultimate loss exceeded the applicable statutory threshold because its ultimate loss included the full PIP amounts payable to the claimant without regard to the existence of the deductible and loss-sharing provisions in its insurance policy. However, when an insurer elects not to enforce a deductible provision rendering its policyholder responsible for paying a significant portion of any PIP claim arising under the policy, the MCCA is subrogated to the insurer's rights and it may bring an action against the policyholder to recover the amount of the deductible. The MCCA may also recover the costs of that action from the insurer. The trial court erred by granting summary disposition to the MCCA because the MCCA was obligated to indemnify AAIC for the amounts it paid in excess of the applicable statutory threshold. The case must be remanded for the trial court to determine whether AAIC can or will receive the contractually required reimbursement from Waste Management and to enter an order in accordance with its determination.

Order granting summary disposition in Docket No. 287153 affirmed; order granting summary disposition in Docket No. 292539 reversed and case remanded.

INSURANCE — NO-FAULT — CATASTROPHIC CLAIMS — INDEMNIFICATION BY MICHIGAN CATASTROPHIC CLAIMS ASSOCIATION — CALCULATION OF ULTIMATE LOSS–DEDUCTIBLES.

No-fault insurers may include amounts that a policyholder is required to pay as a deductible in calculating their ultimate loss for purposes of indemnification by the Michigan Catastrophic Claims Association (MCCA) of personal protection insurance benefits paid in excess of the statutory threshold; under the MCCA's plan of operation, its member insurers must turn over to the MCCA all deductible amounts received by those insurers, up to the amount they received as reimbursement from the MCCA, and the MCCA may initiate an action against a policyholder for payment of a deductible if the insurer fails to do so and may seek reimbursement for the costs of that action from the insurer (MCL 500.3104[2]).

*Dean & Fulkerson, P.C.* (by *Jerry R. Swift*), for American Home Assurance Company.

*Garan Lucow Miller, P.C.* (by *Daniel S. Saylor, David N. Campos,* and *Caryn A. Gordon*), for ACE American Insurance Company.

*Dykema Gossett PLLC* (by *Joseph K. Erhardt, K. J. Miller,* and *Lauren M. London*) for the Michigan Catastrophic Claims Association.

Before: BANDSTRA, P.J., and BORRELLO and SHAPIRO, JJ.

PER CURIAM. These consolidated appeals involve the extent to which defendant, the Michigan Catastrophic Claims Association (MCCA), is required to indemnify member insurers for no-fault personal protection insurance (PIP) benefits paid to or on behalf of an injured claimant when the policyholder is responsible to pay a deductible pursuant to a term of the insurance contract between the member insurer and the policyholder. In each of these consolidated appeals, the trial court determined that the member insurer cannot include amounts that the policyholder is required to pay as a deductible in calculating the member insurer's "ultimate loss" to determine if it has reached the statutory threshold to be considered a catastrophic claim and therefore eligible for indemnification from the MCCA. In Docket No. 287153, plaintiff American Home Assurance Company appeals as of right an order granting summary disposition in favor of the MCCA under MCR 2.116(C)(10). In Docket No. 292539, plaintiff ACE American Insurance Company (AAIC) also appeals as of right an order granting summary disposition in favor of the MCCA under MCR 2.116(C)(10). For the reasons set forth in this opinion, we hold that member insurers may include amounts that a policyholder is required to pay as a deductible in calculating their ultimate loss. However, the MCCA is entitled to reimbursement up to

the entire amount paid to member insurers for all deductible monies received by the member insurers, and the MCCA may initiate an action against policyholders for payment of a deductible if the insurer fails to do so. Accordingly, we affirm in Docket No. 287153, but we reverse and remand for further proceedings consistent with this opinion in Docket No. 292539.

## I. FACTS AND PROCEDURAL HISTORY

### A. DOCKET NO. 287153

On December 26, 2007, American Home filed a complaint against the MCCA, seeking reimbursement of $380,863.66 in PIP benefits paid to an injured claimant. According to the complaint, American Home issued a no-fault policy to Cassens Transport Company for the period of September 30, 2003, through September 30, 2004. American Home alleged that between August 23, 2004, and June 20, 2007, it paid PIP benefits totaling $705,863.60 to claimant Jeffrey Olson after Olson was injured when the motorcycle he was driving struck a Cassens vehicle insured under the no-fault policy. American Home alleged that pursuant to MCL 500.3104(2)(c), the MCCA was obligated to reimburse it for the portion of the "ultimate loss" exceeding $325,000 and that it was therefore entitled to reimbursement in the amount of $380,863.66. According to American Home, the MCCA denied its claim for reimbursement because "the existence of a deductible in an insurance policy decreases the 'ultimate loss' specified in the No-Fault Act . . . ." American Home sought a judgment against the MCCA in the amount of $380,863.66, which included the entire amount it paid the claimant over the statutory threshold of $325,000 applicable to the policy at issue, without any reduction for the deductible paid by Cassens.

In May 2008, the MCCA moved for summary dispo-
sition under MCR 2.116(C)(10), arguing that American
Home was not entitled to indemnification under MCL
500.3104(2)(c) because it had not incurred an ultimate
loss in excess of $325,000. According to the MCCA, the
no-fault policy issued by American Home to Cassens
required the insured to pay a $500,000 deductible. The
MCCA further asserted that American Home could not
include the amount of the deductible, which Cassens
had paid, to achieve the statutory threshold of $325,000
under MCL 500.3104(2)(c) and that because Cassens
paid the $500,000 deductible,[1] American Home's finan-
cial loss was only $205,863. Thus, the MCCA argued
that it had no statutory responsibility to reimburse
American Home because American Home's ultimate
loss did not reach the statutory threshold of $325,000.
The MCCA also argued that even if American Home
had initially paid PIP benefits to Olsen that exceeded
the $325,000 statutory threshold and had been reim-
bursed by the MCCA, once it received payment of the
deductible from Cassens, American Home would have
been required under article X, § 10.06 of the MCCA's
plan of operation to turn the deductible payment over to
the MCCA until American Home sustained an ultimate
loss exceeding $325,000.

American Home filed a brief in response to the
MCCA's motion for summary disposition, asserting that
it was obligated to pay PIP benefits to the claimant
irrespective of any deductible that Cassens was re-
quired to pay under the terms of the no-fault insurance
policy. Predicated on this analysis of its statutory obli-
gation, American Home asserted that it was entitled to

---

[1] The MCCA submitted documentary evidence that American Home·
admitted that the insurance policy had a $500,000 deductible and that
Cassens paid the deductible in full.

summary disposition and entry of a judgment in the amount of $380,863.66 against the MCCA because the MCCA's indemnification obligation under MCL 500.3104(2)(c) had been triggered. In addition, American Home argued that article X, § 10.06 of the MCCA's plan of operation did not apply to deductible reimbursements that it received from Cassens because Cassens was not a "third party" under § 10.06.

The trial court granted the MCCA's motion for summary disposition and denied summary disposition for American Home. In so doing, the trial court determined that the MCCA's indemnification obligation was only owed to its member insurers and that the MCCA was permitted, under MCL 500.3104, to consider the deductible paid by a policyholder in calculating the ultimate loss subject to indemnification. The trial court reasoned that the insurer's ultimate loss could not include amounts that the insurer received from the policyholder as payment for a deductible because the deductible reduced the amounts actually paid by the insurer. The trial court also determined that § 10.06 of the MCCA's plan of operation confirmed that a member insurer must sustain an actual loss in excess of the statutory threshold. In reaching that determination, the trial court reasoned that an insured is a third party within the meaning of § 10.06 because the plan of operation addresses the relationship between the member insurer and the MCCA, not the relationship between an insurer and its insured. Therefore, the trial court stated, "Any other entity is a third party, including the insured." Ultimately, the trial court concluded that American Home's receipt of the $500,000 deductible reduced its ultimate loss to $205,863, which did not meet the statutory threshold of $325,000 under MCL 500.3104(2)(c).

### B. DOCKET NO. 292539

On May 2, 2008, AAIC filed a complaint for declaratory relief against the MCCA after the MCCA denied AAIC's claim for indemnity under MCL 500.3104(2). According to the complaint, AAIC had issued a no-fault insurance policy to Waste Management, Inc.[2] for a one-year period on January 1, 2006. Alice Cobb, a pedestrian, was injured on July 25, 2006, when a vehicle that was owned and operated by Waste Management struck her. AAIC alleged that it had paid more than $2 million in PIP benefits to or on behalf of Cobb since 2006. AAIC sought indemnification from the MCCA for amounts greater that the $375,000 statutory threshold applicable to the policy under MCL 500.3104(2)(e). However, the MCCA denied AAIC's claim. In a letter written to AAIC on January 15, 2008, the MCCA stated, "Please note that we do not reimburse for allocated loss expenses which appear to be considered in your deductibles." The MCCA further stated that in light of the deductibles in Waste Management's insurance policy, AAIC had not reached the statutory threshold, and the MCCA was not yet required to begin reimbursements. In its complaint, AAIC claimed that the MCCA was required under MCL 500.3104(2) and the MCCA's plan of operation to reimburse it for payments over $375,000. Accordingly, AAIC sought a declaratory judgment that it was entitled to reimbursement from the MCCA.

The MCCA moved for summary disposition under MCR 2.116(C)(10). It argued that it was not required to reimburse member insurers for amounts that the insurer was not obligated to pay. According to the MCCA, Waste Management's insurance policy contained provi-

---

[2] We observe that neither of the policyholders in this case, Cassens and Waste Management, was self-insured.

sions requiring it to pay a deductible, which AAIC elected not to enforce. Thus, the MCCA contended that to the extent that the deductible was not collected because of AAIC's decision not to enforce a contractual right to reimbursement from Waste Management, AAIC's statutory obligation to pay the claimant's PIP benefits was not triggered. The MCCA also contended that AAIC's decision not to enforce the deductible meant that AAIC did not suffer an "ultimate loss" that was reimbursable under MCL 500.3104(2).

The MCCA attached to its motion portions of the insurance policy issued by AAIC to Waste Management. According to the "quota share deductible endorsement," Waste Management was required to pay a $1 million deductible for each accident. The endorsement also provided that AAIC's quota share limit for the first $4 million per accident in excess of the $1 million deductible was 40 percent, while Waste Management's corresponding quota share deductible was 60 percent. The endorsement further stated that for the next $5 million in excess of the $4 million, AAIC's quota share limit was 50 percent, and Waste Management's corresponding quota share deductible was also 50 percent. Additionally the endorsement provided that AAIC's "obligation to pay damages under this policy applies only to the amount of 'losses' in excess of the 'Deductible per Accident' and within the 'Quota Share Limit' stated in the Schedule . . . ." To secure its deductible obligations under the insurance policy, Waste Management agreed to provide AAIC with an irrevocable letter of credit.

In support of its motion for summary disposition, the MCCA also submitted documentary evidence in which AAIC claimed a total loss of $2,168,193.22. According to

the MCCA, because of the $1 million deductible, and because of Waste Management's responsibility to pay its quota share deductible of 60 percent of the first $4 million after the $1 million deductible, AAIC was only obligated to pay $467,277.29 of the claimed $2,168,193.22 loss.[3] Although AAIC elected to pay the $1 million deductible and Waste Management's 60 percent of the first $4 million, AAIC was under no legal obligation to do so. Therefore, the MCCA argued, those amounts could not be included in determining AAIC's ultimate loss.

AAIC also moved for summary disposition. In relevant part, AAIC argued that the MCCA was obligated by MCL 500.3104(2) to indemnify it for PIP payments paid or payable to or on behalf of the claimant, without consideration of Waste Management's contractual obligation to pay a deductible. AAIC alleged that, at the time of the motion, it had paid more than $2,659,883.76 to the claimant. AAIC further argued that the MCCA's plan of operation did not permit it to refuse to reimburse AAIC.

The trial court granted summary disposition in favor of the MCCA. In so ruling, the trial court determined that AAIC's ultimate loss under MCL 500.3104 "refer[s] to the no-fault insurer's actual financial detriment" and that "[b]ecause Plaintiff has the right to seek reimbursement from its insured for most of the PIP benefits it has paid for Ms. Cobb's claim, Plaintiff has suffered a financial detriment only for its share of the claim, as determined by the Quota Share Deductible endorsement, that exceeds $375,000." The trial court

[3] $2,168,193.22 less $1 million for Waste Management's "Deductible Per Accident" equals $1,168,193.22. AAIC's 40 percent share of $1,168,193.22 is $467,277.29. Waste Management's 60 percent share of $1,168,193.22 is $700,915.93.

further stated that the language of the insurance policy issued to Waste Management "places the ultimate financial obligation for a significant portion of Ms. Cobb's benefits on Waste Management, not [AAIC]," and that AAIC

> would be obligated to pay the portion of the claim subject to the deductibles only if [AAIC] is unable to obtain reimbursement from its insured—a scenario that is highly unlikely given that the policy required Waste Management to provide an irrevocable letter of credit as security for its obligations.

The trial court also articulated the mathematical formula to be used to calculate the MCCA's obligation to reimburse AAIC. However, because AAIC's complaint sought a declaratory judgment regarding the MCCA's obligation to reimburse it, not money damages, the trial court did not calculate the amount of reimbursement the MCCA owed AAIC.

### II. STANDARD OF REVIEW

This Court's review of a trial court's grant of summary disposition pursuant to MCR 2.116(C)(10) is as follows:

> This Court reviews de novo a trial court's grant or denial of summary disposition under MCR 2.116(C)(10). *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion brought under MCR 2.116(C)(10) tests the factual support for a claim. *Downey v Charlevoix Co Rd Comm'rs*, 227 Mich App 621, 625; 576 NW2d 712 (1998). The pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties must be considered by the court when ruling on a motion brought under MCR 2.116(C)(10). *Downey, supra* at 626; MCR 2.116(G)(5). When reviewing a decision on a motion for summary disposition under MCR 2.116(C)(10), this Court "must consider the documentary

evidence presented to the trial court 'in the light most favorable to the nonmoving party.' " *DeBrow v Century 21 Great Lakes, Inc (After Remand)*, 463 Mich 534, 539; 620 NW2d 836 (2001), quoting *Harts v Farmers Ins Exch*, 461 Mich 1, 5; 597 NW2d 47 (1999). A trial court has properly granted a motion for summary disposition under MCR 2.116(C)(10) "if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). [*Clerc v Chippewa Co War Mem Hosp*, 267 Mich App 597, 601; 705 NW2d 703 (2005), remanded on other grounds 477 Mich 1067 (2007).]

To the extent that the issues in this case require this Court to interpret insurance contracts and engage in statutory interpretation, these are questions of law that we review de novo. *Healing Place at North Oakland Med Ctr v Allstate Ins Co*, 277 Mich App 51, 55; 744 NW2d 174 (2007).

### III. ANALYSIS

The first issue that this Court must decide involves the scope of the MCCA's statutory responsibility under MCL 500.3104(2) to indemnify member insurers for PIP benefits paid to or on behalf of their policyholders; specifically, we must decide whether the MCCA can consider the payment of a deductible by a policyholder or the insurer's failure to demand compliance with a deductible provision in an insurance contract in determining whether the member insurer has sustained an ultimate loss that meets the applicable statutory threshold under MCL 500.3104(2).

The Michigan no-fault act, MCL 500.3101 *et seq.*, requires Michigan drivers to maintain automobile insurance. MCL 500.3101(1) provides, "The owner or registrant of a motor vehicle required to be registered in

this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance." Under the no-fault act, insurers are required to pay or reimburse their insured's lifetime medical expenses. *Farmers Ins Exch v Titan Ins Co*, 251 Mich App 454, 456; 651 NW2d 428 (2002). Furthermore, "[t]here is no dollar limit on an insurer's liability for medical, hospital, and rehabilitation benefits under the statute[.]" *League Gen Ins Co v Mich Catastrophic Claims Ass'n*, 435 Mich 338, 340; 458 NW2d 632 (1990). The lack of a dollar limit on insurers' liability for PIP benefits potentially exposes insurers to enormous liability in cases in which injuries are severe. *Id.* Therefore, the Legislature created the MCCA "in response to concerns that Michigan's no-fault law provision for unlimited personal injury protection benefits placed too great a burden on insurers, particularly small insurers, in the event of 'catastrophic' injury claims." *In re Certified Question (Preferred Risk Mut Ins Co v Mich Catastrophic Claims Ass'n)*, 433 Mich 710, 714; 449 NW2d 660 (1989). The MCCA is not a no-fault insurer of its member insurers; rather, it is an indemnitor for benefits paid by member insurers in excess of the statutory thresholds established in MCL 500.3104(2). *United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 17-18; 773 NW2d 243 (2009). An insurer must belong to the MCCA in order to write insurance in this state, MCL 500.3104(1); *In re Certified Question*, 433 Mich at 715, and the insurer must pay premiums to be a member of the MCCA, MCL 500.3104(7)(d) and (e).

The MCCA's duty to indemnify its member insurers is triggered by different threshold amounts, which are based on the date the insurance policy was issued or

renewed. MCL 500.3104(2)(a) through (k). In relevant part, MCL 500.3104(2) provides:

> The [MCCA] shall provide and each member shall accept indemnification for 100% of the amount of ultimate loss sustained under personal protection insurance coverages in excess of the following amounts in each loss occurrence:

> \* \* \*

> (c) For a motor vehicle accident policy issued or renewed during the period July 1, 2003 to June 30, 2004, $325,000.00.

> \* \* \*

> (e) For a motor vehicle accident policy issued or renewed during the period July 1, 2005 to June 30, 2006, $375,000.00.

MCL 500.3104(7)(a) provides that "[t]he [MCCA] shall . . . [a]ssume 100% of all liability as provided in [MCL 500.3104(2)]." "Ultimate loss" is defined as "the actual loss amounts that a member is obligated to pay and that are paid or payable by the member, and do not include claim expenses." MCL 500.3104(25)(c).

We must construe portions of MCL 500.3104 in order to determine whether the MCCA can consider payment of a deductible by a policyholder or an insurer's failure to demand compliance with a deductible provision in an insurance contract when calculating whether a member insurer has sustained an ultimate loss sufficient to meet the statutory threshold for indemnification.

### A. DOCKET NO. 287153

In the case of American Home, American Home paid the claimant PIP benefits totaling $705,863.60. Al-

though the insurance policy between American Home and Cassens contained a clause requiring Cassens to pay a $500,000 deductible, MCL 500.3105(1)[4] obligates insurers to pay PIP benefits regardless of a policyholder's payment of a deductible or the existence of a deductible clause in the insurance policy. Because American Home was obligated to pay and did pay $705,863.60, the ultimate loss under MCL 500.3104(25)(c) was $705,863.60. That amount clearly exceeded the $325,000 statutory threshold, which would have obligated the MCCA to pay American Home the excess amount of $380,863.80. Thus, the trial court erred by concluding that an insurer's ultimate loss did not include amounts the insurer received from the policyholder as payment for the deductible.

However, we conclude that the trial court's result was ultimately correct because under article X, § 10.06 of the MCCA's plan of operation,[5] a member insurer must turn over to the MCCA any amount it recovers from a third party for which the member has already been reimbursed by the MCCA. Section 10.06 provides:

> **Recovery from Other Sources.** Whenever a Member recovers from a third party an amount for which it has already been reimbursed by the Association, the Member

---

[4] "The no-fault act mandates that insurers 'pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle.' " *Cruz v State Farm Mut Auto Ins Co*, 241 Mich App 159, 164; 614 NW2d 689 (2000), aff'd 466 Mich 588 (2002), quoting MCL 500.3105(1).

[5] MCL 500.3104(17) provides:

> Not more than 60 days after the initial organizational meeting of the board [of directors of the MCCA], the board shall submit to the commissioner for approval a proposed plan of operation consistent with the objectives and provisions of this section, which shall provide for the economical, fair, and nondiscriminatory administration of the association and for the prompt and efficient provision of indemnity.

shall promptly turn such recovered monies over to the
Association to the extent of any reimbursement theretofore
received, provided that the Board may permit a Member to
retain therefrom such amount as the Board deems reason-
able and necessary attorney fees and litigation costs in-
curred in connection with obtaining the recovery from the
third party.

Thus, because Cassens paid the $500,000 deductible
pursuant to its contract with American Home, had the
MCCA indemnified American Home for the $380,863.80
American Home paid above the statutory threshold, it
would have been entitled to receive that amount back in
reimbursement from the $500,000 American Home
received from Cassens.

We disagree with American Home's argument that
Cassens is not a third party under § 10.06. We conclude
that for purposes of indemnification by the MCCA of a
member insurer, an insurer's policyholder is a third
party and that member insurers are required to turn
over to the MCCA amounts received from their policy-
holders as payment of a deductible.

The plan of operation does not address the contractual
relationship between an insurer and a policyholder. The
plan of operation is required by statute and mandates that
the MCCA's board establish a plan of operation to "pro-
vide for the economical, fair, and nondiscriminatory ad-
ministration of the association and for the prompt and
efficient provision of indemnity." MCL 500.3104(17). Fur-
thermore, under MCL 500.3104(1), insurers in Michigan
"shall be a member of the [MCCA] and shall be bound by
the plan of operation of the [MCCA] . . . ." Similarly, MCL
500.3104(20) provides that insurers in Michigan are
"bound by and shall formally subscribe to and participate
in the plan approved as a condition of maintaining [their]
authority to transact insurance in this state." Thus, the
plan of operation addresses the relationship between the

MCCA and its member insurers rather than the contractual relationship between an insurer and its policyholder.

Policyholders are not members of the MCCA and are not bound by its plan of operation. Thus, at least for the purposes of § 10.06, a policyholder constitutes a "third party."[6] Because policyholders are third parties under § 10.06, any amounts received by an insurer as a deductible from a policyholder must be turned over to the MCCA if it indemnified the insurer for an ultimate loss amount that included amounts that the policyholder was required to pay as a deductible. Therefore, Cassens is a third party and its payment of its deductible constituted recovered monies that American Home was required to turn over to the MCCA up to the amount that American Home was reimbursed.

Therefore, we hold that although American Home's ultimate loss was $705,863.60, which obligated the MCCA to pay that portion of the loss above the $325,000 statutory threshold, MCL 500.3104(2)(c), to American Home, American Home's receipt of the $500,000 deductible from Cassens required American Home to reimburse the same amount to the MCCA, § 10.06, thereby cancelling out both obligations. Accordingly, we conclude that the trial court properly granted summary disposition to the MCCA, having reached the right result, albeit for the wrong reason. See *Taylor v Laban*, 241 Mich App 449, 458; 616 NW2d 229 (2000).

### B. DOCKET NO. 292539

The case involving AAIC is factually different from the case involving American Home. The insurance

---

[6] This Court has previously implicitly found that an insurer constitutes a "third party" under § 10.06. See *Farmers Ins Exch*, 251 Mich App at 458-459 (holding that § 10.06 applies to an insurer's recoupment of money from another insurer).

contract between American Home and its policyholder contained a deductible, and the insured in that case paid the deductible as required by the insurance contract. In contrast, although the insurance contract between AAIC and its policyholder required the payment of a deductible, AAIC did not seek to enforce that provision, and the policyholder did not, in fact, pay the deductible.

AAIC argues that the deductible must be included in calculating its ultimate loss because the full PIP amounts are payable by AAIC to the claimant regardless of the existence of the deductible provision in the insurance policy. As discussed above, this is the proper understanding of "ultimate loss," so AAIC's ultimate loss was the more than $2 million in benefits that it paid. Thus, AAIC's payments exceeded the $375,000 statutory threshold in MCL 500.3104(2)(e), thereby triggering the MCCA obligation to repay AAIC the amounts above that threshold. However, given that AAIC *elected* not to recover these monies, this is not the end of the analysis because such a result would allow insurance companies to claim that they have no duty to reimburse the MCCA for monies that the insurer is legally entitled to receive pursuant to its contract with its policyholder. This would permit insurers to offer commercial policies with high deductibles and lower premiums and advise potential insureds that they would never have to pay the deductible because the MCCA would ultimately be responsible for those amounts. The MCCA was not set up to subsidize large commercial deductibles, and we decline to create a system that would require it to do so.

Insurers and policyholders are free to negotiate the terms of their insurance contracts. In this case, AAIC negotiated a policy that required the policyholder to pay

a large deductible and to assume the risk of a large percentage of any loss in excess of the deductible. AAIC therefore negotiated a policy that rendered the policyholder responsible for paying a significant portion of any PIP claim arising under the policy. The policyholder was contractually bound to comply with these provisions of the policy. Under such circumstances, we hold that the MCCA is subrogated to the rights of the insurer and may bring an action against the policyholder for the amount of the deductible if the insurer fails to do so and that the MCAA may recover the costs of such an action from the insurer.[7]

Because we hold that the MCCA was obligated to repay AAIC for the amounts it paid out in excess of the $375,000 statutory threshold, we must reverse the trial court's grant of summary disposition. Although the trial court noted that Waste Management was required to provide AAIC with an irrevocable letter of credit to secure its contractual obligations under the insurance policy, whether AAIC can or will receive reimbursement has not been briefed, and we cannot determine this issue on the record before us. Accordingly, we remand this case back to the trial court for such a determination. If it is clear that AAIC will receive the $1 million

---

[7] We believe that our holding is not only consistent with the statutory and contractual provisions at issue, but carefully balances the interests of the parties and protects both sides from various inequities. By our concluding that the ultimate loss includes deductible amounts, the MCCA is required to make payment regardless of the deductible provisions, so that if a deductible is unrecoverable, the insurer has not lost those funds. Thus, insurers are protected when they are unable to collect a deductible because of the policyholder's insolvency. At the same time, however, by holding that deductible amounts received by an insurer are reimbursable to the MCCA and that the MCCA may initiate an action to recover the deductible from the policyholder if the insurer fails to do so, we protect the MCCA from having to pay out amounts for which it is rightfully entitled to reimbursement.

deductible and the additional 60 percent of the next $4 million in benefits due from Waste Management under its policy and, therefore, would be required to reimburse the MCCA, the trial court may decline to order the MCCA to make payment only to have it reimbursed. In the event that it is not clear, the trial court may order the MCCA to make payment to AAIC. Using the formula articulated by the trial court to calculate the MCCA's obligation to indemnify AAIC, AAIC would be entitled to indemnification from the MCCA in the amount of $288,954.[8] Should AAIC fail to seek its deductible from Waste Management, the MCCA may elect to take action against Waste Management and seek reimbursement of the costs of that action from AAIC.

### IV. CONCLUSION

For the reasons stated, we hold that the ultimate loss to an insurer under MCL 500.3104 includes deductible amounts due from the policyholder under the insurer's PIP policy. However, to the extent that the insurer has received or in the future receives payment for the deductible, article X, § 10.06 of the MCCA's plan of operation requires that those monies be returned to the MCCA up to the amount that the MCCA reimbursed the insurer. Finally, to the extent that an insurer fails to

---

[8] The trial court ordered that the MCCA use the following formula to determine its obligation to reimburse AAIC:

    (i) subtracting the $1,000,000 Waste Management deductible;

    (ii) calculating 40% of the next $4,000,000 in benefits; and

    (iii) subtracting $375,000 from that 40% share.

Application of this formula is as follows: $2,659,883.76 minus $1,000,000 equals $1,659,883.76. Forty percent of $1,659,883.76 is $633,954; $633,954 minus $375,000 equals $288,954.

seek payment of a deductible due and owing under its insurance contract, the MCCA is subrogated to the rights of the insurer and may bring an action against the policyholder for the amount of the deductible and may seek reimbursement of the costs involved from the insurer.

Accordingly, we affirm in Docket No. 287153 and reverse and remand for additional proceedings consistent with this opinion in Docket No. 292539. No taxable costs are awarded under MCR 7.219, a question of public significance being involved. We do not retain jurisdiction.