# STATE OF MICHIGAN

# COURT OF APPEALS

JASON R. SALENBIEN,

        Plaintiff-Appellant,

and

ALLSTATE INSURANCE COMPANY,

        Intervening-Plaintiff,

v

ARROW UNIFORM RENTAL LIMITED
PARTNERSHIP,

        Defendant-Appellee.

UNPUBLISHED
August 18, 2016

No. 326957
Michigan Compensation
        Appellate Commission
LC No. 14-000026

---

JASON R. SALENBIEN,

        Plaintiff,

and

ALLSTATE INSURANCE COMPANY,

        Intervening-Plaintiff-Appellant,

v

ARROW UNIFORM RENTAL LIMITED
PARTNERSHIP,

        Defendant-Appellee.

No. 326961
Michigan Compensation
        Appellate Commission
LC No. 14-000062

---

Before: STEPHENS, P.J., and SERVITTO and GLEICHER, JJ.

PER CURIAM.

-1-

For a second time, we review the Michigan Compensation Appellate Commission's (MCAC's) denial of workers' compensation benefits to plaintiff, a travelling salesman who was injured while returning to his office to complete work-related tasks. During this round, the MCAC misinterpreted and incorrectly applied this Court's prior opinion, violating the law-of-the-case doctrine. As a result, the MCAC incorrectly determined that plaintiff's injuries did not arise out of his employment and that he was not entitled to benefits. We reverse that judgment. On remand, the MCAC must also effectuate our determination that the magistrate who heard the evidence erroneously concluded that the intervening-plaintiff, plaintiff-employee's no-fault insurer, was not entitled to full reimbursement.

## I. BACKGROUND

### A

Jason Salenbien was a sales consultant for Arrow Uniform Rental. His duties included travelling to potential clients to secure new business. On July 26, 2006, Salenbien made such a sales call at a plant in Homer. When Salenbien left the plant, he travelled eastbound on M-60, heading toward Jackson. Salenbien lived in Jackson and worked from Arrow's satellite office in that city. Salenbien did not reach Jackson, however, as he was involved in a serious, multivehicle accident. He suffered a closed head injury that erased his memory of the day in question, among other severe wounds.

Salenbien initially contacted his no-fault insurer, Allstate, and received first-party personal protection insurance (PIP) benefits. Allstate suggested that Salenbien's injuries might be compensable under the Worker's Disability Compensation Act (WDCA), MCL 418.1 *et seq.* Salenbien then sought coverage from his employer and Allstate requested reimbursement for the expenses paid as of that date.

Arrow denied coverage and Salenbien appealed to the Worker's Compensation Appellate Commission, which has since been reconfigured as the Michigan Compensation Appellate Commission (MCAC). Allstate intervened in the action to protect its interest. A MCAC magistrate denied Salenbien's and Allstate's claims, determining that they "failed to establish by a preponderance of the evidence that" the accident and Salenbien's injuries "arose out of and in the course of [his] employment with Arrow." The magistrate noted that as a general rule, employees are not entitled to benefits for injuries sustained while travelling to and from work. Salenbien had not demonstrated the applicability of any exception to that rule, the magistrate found. "The magistrate also concluded that [Salenbien's] injury-related memory loss left to speculation [Salenbien's] destination after he left the . . . plant and, consequently, whether [Salenbien] was working at the time of his accident." *Salenbien v Arrow Uniform Rental LP*, unpublished opinion of the Court of Appeals, issued September 16, 2010 (Docket Nos. 291517, 291543) (*Salenbien I*), unpub op at 2.

Salenbien and Allstate requested review by the MCAC, which affirmed in a split opinion. The majority acknowledged that injuries sustained during travel can be compensable "so long as the travel was an 'integral' component of the employee's job." *Id.* at 2-3. In those cases where coverage had been afforded, "the employees had been injured while actually performing their respective jobs." *Id.* at 3. In this case, however, the MCAC majority ruled that Salenbien had

not established "whether he was working at the time of his accident." *Id.* The majority conceded that Salenbien presented circumstantial evidence that he was travelling for work at the time of his injury. Specifically, Salenbien testified that it was his habit to return to the office at the end of a sales day to do paperwork and prepare his routes and materials for the following day. Further, a friend and a cousin both testified that Salenbien contacted them before his last sales call and informed them that he had one more client meeting and then he intended to return to the office. But, the MCAC majority emphasized, the magistrate did not adopt that testimony and therefore Salenbien had not convinced the magistrate that his travel was connected to his work. See *id.*

B

Salenbien and Allstate appealed the MCAC ruling to this Court. Citing *Thomas v Certified Refrigeration, Inc*, 392 Mich 623; 221 NW2d 378 (1974), this Court acknowledged that "[g]enerally, injuries sustained while the worker is traveling to or from work, and off the work premises, are not compensable." *Salenbien I*, unpub op at 4. However, the commission had recognized exceptions to that rule, including "where travel constitutes an integral part of the worker's job duties such that the ordinary hazards of travel are to be considered work-related hazards." *Id.* The panel analyzed the two main cases outlining the "integral-part" exception: *Naski v Contempo Kitchens, Inc*, 2007 ACO 78, and *Martin v Mut of Detroit Ins Co*, 2004 ACO 74. *Salenbien I*, unpub op at 4-5. Contrary to the appellants' urging, this Court ruled that those cases did not apply "regardless of the employee's intended destination after leaving the customer's location," but rather supported a proposition that there must be a nexus between the work and the injury for liability to exist. *Id.* at 5. Again citing *Thomas*, the Court noted that "for an injury to be compensable under the WDCA, there must be a sufficient nexus between the employment and the injury so that it may be said that the injury was a circumstance of the employment," and that "[t]his nexus exists where the circumstances of employment place the employee where he was when he was accidentally injured." *Salenbien I*, unpub op at 5.

Applying the law to this case, this Court held:

In this case, however, unlike in *Martin* and *Naski*, [Salenbien] had met with the prospective client and was injured in an accident that occurred after he had left the client's premises. Although it is clear from the evidence adduced at the hearing before the magistrate that [Salenbien's] travel was an integral part of [his] sales job, and that [Salenbien] would not have been traveling on M-60 at the time of the accident but for having completed his sales meeting . . ., it is also clear that [Salenbien] had accomplished the purpose of his meeting and had left the [customer's] premises and was en route to a new destination. If that destination was his home, then such a trip would be deemed personal travel. Consequently, the nexus between employment duties and injury would have ended once [Salenbien] left the [customer's] premises. . . . Under such circumstances, the nexus between employment and injury required for compensation under the WDCA would not be present. Therefore, [Salenbien's] destination was relevant for a determination as to whether he is entitled to benefits under that Act. . . . A non-work-related destination at the time of the accident would remove [Salenbien's] injuries from the scope of the WDCA, while a work-related

-3-

destination would bring his injuries within the ambit of the WDCA. [*Salenbien I,* unpub op at 5-6.]

The *Salenbien I* panel continued, "even though we conclude that the [M]CAC applied the proper legal theory to this action, we also conclude that [Salenbien] and [Allstate] correctly assert that the [M]CAC majority erroneously determined that [Salenbien] failed to demonstrate that his travel at the time of the accident was work-related." *Id.* at 6. Salenbien had no memory of the accident and his route at the time could have led either to the office or his home. However, "significant circumstantial evidence"—testimony regarding Salenbien's routine and the information he imparted to his cousin and friend—established that he was travelling to the office. *Id.* Accordingly, this Court concluded:

> In light of this circumstantial evidence and the magistrate's finding that [Salenbien's] friend and his cousin provided "reliab[le]" testimony, the majority's conclusion that [Salenbien] had failed to establish by a preponderance of the evidence that his destination at the time of the accident was work-related is not supported under the any competent evidence standard. . . . [T]here is no evidence in the record from which it may be inferred that [Salenbien] was no longer intending to act in a manner consistent with his prior expression of intent as related by both [Salenbien's] friend and his cousin. Absent evidence from which it could be inferred that [Salenbien] changed his mind prior to returning to the office as he had previously stated to two people, we must find that the [M]CAC majority's speculative conclusion to the contrary is not supported by any competent evidence. [*Id.* at 7 (citation omitted).]

C

On remand, the MCAC paraphrased *Salenbien I*'s ruling as finding that the commission "had applied the correct legal standard in its review of the magistrate's finding that the vehicular accident did not arise out of and in the course of . . . Salenbien's employment with . . . Arrow" but "determined that the causal link between work and the accident was not speculative '. . . because the circumstantial evidence established, by a preponderance of the evidence that [Salenbien] was returning to the office when the accident occurred.' " The MCAC then remanded for a hearing before a magistrate:

> All issues other than "arising out of and in the course of" have yet to be litigated. We agree with [Arrow] that . . . Allstate reads too much into the Court of Appeals decision as to the "arising" issue. The Court [of Appeals] determined that a preponderance of the evidence on this record demonstrated that . . . [Salenbien] was on his way to the office at the time of the motor vehicle accident and that an inference to the contrary on this record was not based upon any record evidence, was mere speculation. That was the Court's only factual finding. It may or may not be dispositive of the "arising out of" question. The magistrate on remand should consider the arguments of the parties on this issue in the context of his or her deliberations regarding all the issues presented for consideration by the parties during remand. As the magistrate may elect to reopen the record for proofs as to

additional issues, we will not speculate at this point as to the nature of the final trial record in this matter.

The Court of Appeals has determined that [Salenbien] proved he was traveling to his office at the time of the accident. It did not quarrel with the [M]CAC's analysis of the "integral part of the job" doctrine to the facts as the [M]CAC found them, and specifically found that . . . Allstate's interpretation of that doctrine to be overbroad. But via its own fact finding, the Court of Appeals altered the factual findings to which the doctrine might be applied. Upon remand the magistrate may allow additional evidence, further impacting the overall factual record here. It is premature for us to determine the applicability of the "integral part of the job" doctrine before that process plays out.

In light of the Court of Appeals' directive we are compelled to remand this matter to the Board of Magistrates for further proceedings consistent with the Court of Appeals' finding that there exists a preponderance of evidence in this record that . . . [Salenbien] was returning to his office at the time he was involved in the motor vehicle accident. . . .

Following continued hearings, a magistrate found that Salenbien suffered an injury that arose out of and in the course of employment. The magistrate recited the *Salenbien I* determination that Salenbien's destination at the time of his accident was relevant and that "a work-related destination would bring [the] injuries within the ambit of the WDCA." This Court further noted that the "[M]CAC majority erroneously determined that [Salenbien] failed to demonstrate that his travel at the time of the accident was work-related." The magistrate reasoned:

[Arrow] attempts to divorce the meaning of that statement from the conclusion that the injuries arose out of and in the course of employment. It argues that the Court accepted the evidence showing [Salenbien] intended to return to his office and then discussed some potential reasons why he would do so. But according to [Arrow], the Court did not specifically go on to conclude that because [Salenbien] was going to the office, he was actually in the course and scope of employment at the time of the accident. This is not a difference without distinction, as case law has addressed employees hurt while traveling to the place of work for non-work reasons, such as picking up a paycheck. . . . According to [Arrow], finding that [Salenbien] was going to work simply impacts one of four factors noted in *Forgach [v George Koch & Sons Co*,] 167 Mich App 50[; 421 NW2d 568] (1988). The remaining three factors must still be applied. Since the original trial decision did so and found them to be in [Arrow's] favor, [it] argues it must prevail again on the issue.

There are several problems with this line of logic. First, *Forgach* involved a case where the employee was on his way home, not going to the office. The four factor test identified in that case was linked to injuries occurring when either coming from or going home . . . and is not applicable here. Second, while defendant correctly notes that the Court of Appeals found the [M]CAC applied

the proper legal theory, it was not referring to the *Forgach* test, but was rejecting [Allstate's] argument that [Salenbien's] destination was irrelevant. Third, the Court of Appeals' opinion spent time noting various reasons why [Salenbien] might not have been returning to the office that would have been work-related. While the specific language of the opinion might not be 100% unambiguous, it still seems obvious that the Court of Appeals was *not* just finding that [Salenbien] was returning to the office, but was also concluding that he was returning to the office to perform additional work activities, thus making the injury work-related.

It appears, however, that the MCAC would side with the employer. Their remand opinion states that the Court of Appeals only found [Salenbien] to be returning to the office, but not that doing so meant he was still in the course of his employment, leaving open the question of whether his injuries "arose out of" his work activities. If that is an accurate interpretation of the Court of Appeals opinion, it means I am still required to make findings based on the evidence as to whether [Salenbien] was still intending to perform work when he returned to the office. Therefore, I find that the drive from the last sales call (a work activity) to the office to prepare for the next day (another work activity) would be in the course of employment.

The Court of Appeals based its conclusion that [Salenbien] was returning to the office on competent, unrebutted, circumstantial evidence. The same would hold true for the evidence on why [Salenbien] was returning to the office. As the Court of Appeals noted, [Salenbien] testified in the original trial . . . that he would often go to the office after his last sales call to review his next day's schedule and prepare for sales calls. [Arrow's] witness at the original trial, . . . testified that [Salenbien] was not required to return to the office at the end of a day . . ., but also admitted sales staff had odd hours . . ., that he did not know [Salenbien's] usual practice . . ., and that he did not know where [Salenbien] was going at the time of his accident. . . . If one starts with the conclusion, as directed by the Court of Appeals, that [Salenbien] was in fact going to the office, and given that there is no credible evidence to say he was going there for any other reason than to prepare for his next day's work, as his testimony supported, then it is inevitable to conclude that the accident arose out of [Salenbien's] employment and was work-related.

The magistrate therefore ruled in favor of Salenbien and Allstate.

Arrow appealed this decision to the MCAC, which reversed. The MCAC first determined "that the Court of Appeal[s] remand left open the question of whether or not [Salenbien's] injuries met both standards of [MCL 418.301]," i.e., whether the injury both was in the course of Salenbien's employment and arose out of his employment, resolving only the factual question whether Salenbien "was returning to his office at the time of the injury after a sales call." Given the questions remaining, the MCAC found that the magistrate assigned on remand should have considered the factors outlined in *Stark v LE Myers Co*, 58 Mich App 439; 228 NW2d 411 (1975), and *Forgach*. The original magistrate had considered the four factors of *Stark* and *Forgach*, concluding that none were met. The Court of Appeals reversed on grounds

only relevant to one factor, the MCAC opined, leaving intact the remainder of the magistrate's analysis. That the magistrate assigned on remand found inconsistent with the original magistrate on the remaining three factors, supported reversal, in the MCAC's estimation. In reaching this conclusion, the MCAC rejected Allstate's contention that the *Forgach* factors were inapplicable

> because that case and others only applied to going to a work location, a factual situation different from the current situation, where [Salenbien] was returning from a meeting with the client and, as the court decided, returning to his workplace. The commission believes this is an argument without substance. We agree with [Arrow] that restricting the findings of *Stark* and *Forgach* to this limited scenario of going to work makes no sense and is inconsistent with good case law interpretation and with the public interest.

The MCAC ultimately determined that Salenbien failed to establish that his injuries arose out of his employment. In this vein, "[Salenbien's] intended destination during work travel may well be determinative of whether the injury is in the course of employment, but is merely relevant to address the nexus between work and injuries." The magistrate was therefore required to consider Salenbien's destination in addressing whether his injury arose out of his employment, but that factor was not determinative standing alone.

The MCAC also rejected the applicability of "the doctrine of 'integral part of the job' " in the current matter, although it declined to go into detail regarding its decision. Ultimately, the MCAC summarized:

> [A]n injury is not compensable just because it occurs while traveling on company business. This may establish that it occurred in the course of employment but is not dispositive of the issue of "arising out of." The case law, including *Stark* and *Forgach*, requires that four factors be considered in determining "arising out of" and in this respect [the magistrate's] opinion is not supported by competent, material, and substantial evidence. Neither the Court of Appeals decision, nor the decision by the WCAC or the MCAC, invalidated that part of [the former magistrate's] original decision, finding that the four elements of *Stark* and *Forgach* were not met. We continue to affirm that portion of [the former magistrate's] opinion that [Salenbien] did not preponderate in proving that the injuries he sustained on July 26, 2006 "arose out of" his employment with [Arrow]. For these reasons, the [MCAC] finds that [the magistrate's] decision . . . must be reversed.

Salenbien and Allstate again appeal.

## II. APPLICABILITY OF THE WDCA

This Court described the standard of review in worker's compensation cases in *Moore v Prestige Painting*, 277 Mich App 437, 447; 745 NW2d 816 (2007):

> The [M]CAC must review the magistrate's decision under the "substantial evidence" standard, and we review the [M]CAC's findings of fact under the "any evidence" standard. *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691,

702-704; 614 NW2d 607 (2000). Our review begins with the [M]CAC's decision, not the magistrate's. *Id.* "Findings of fact made or adopted by the [M]CAC are conclusive on appeal, absent fraud, if there is any competent evidence in the record to support them." *Tew v Hillsdale Tool & Mfg Co*, 268 Mich App 399, 405; 706 NW2d 883 (2005). We review de novo "questions of law involved in any final order of the [M]CAC." *DiBenedetto v West Shore Hosp*, 461 Mich 394, 401; 605 NW2d 300 (2000). "[A] decision of the [M]CAC is subject to reversal if it is based on erroneous legal reasoning or the wrong legal framework." *Id.* at 401-402.

The question whether an employee's injuries arose out of and in the course of employment presents a question of law if the facts are not in dispute; otherwise, it presents a mixed question of fact and law. *Koschay v Barnett Pontiac, Inc*, 386 Mich 223, 225; 191 NW2d 334 (1971); *Zarka v Burger King*, 206 Mich App 409, 411; 522 NW2d 650 (1994).

Salenbien and Allstate contend that the MCAC's decision was contrary to the opinion issued by this Court and therefore violated the law-of-the-case doctrine. Consistent with this doctrine, "[o]n remand, a trial court is required to comply with a directive from an appellate court." *Duncan v State*, 300 Mich App 176, 188; 832 NW2d 761 (2013). "[T]he law of the case doctrine applies only to issues implicitly or explicitly decided in the previous appeal," and a lower tribunal "fails to follow the law of the case when it revisits a matter on which this Court has already ruled." *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 128; 737 NW2d 782 (2007).

The MCAC violated the law-of-the-case doctrine when it determined that the magistrate should have reached the *Forgach* factors and thereafter determined that Salenbien's injuries did not arise out of his employment. In *Forgach*, 167 Mich App at 57-58, quoting *Stark*, 58 Mich App at 443, this Court described:

> [There] is arising through evolution a new rule which compensates where there is sufficient nexus between the employment and the injury so that it may be said that the injury was a circumstance of the employment. . . .
>
> Considerations relevant to the ultimate determination of whether an injury to an employee while on the way to work is sufficiently employment related to be compensable are:
>
> 1. Whether employer paid for or furnished employee transportation. . . .
>
> 2. Whether the injury occurred during or between working hours. . . .
>
> 3. Whether the employer derived a special benefit from the employee's activities at the time of the injury. . . .
>
> 4. Whether the employment subjected the employee to excessive exposure to traffic risks.

This Court did not specifically evaluate and apply the language of this test in *Salenbien I*. However, we did determine that Salenbien's travel was "employment related," the overall purpose of the *Forgach* test. It is true that *Salenbien I* did not specifically overrule the original magistrate's assessment that Salenbien did not meet any of the four factors outlined in *Forgach*. However, this Court vacated the tribunal's earlier assessment of those factors at least by implication. Had this Court meant to affirm that portion of the MCAC's or original magistrate's opinions, we would not have answered the question whether Salenbien's injury was work related; we would have simply stated that Salenbien's destination was relevant in considering whether his travel was work related and left the remainder to the MCAC's consideration on remand. Consistent with our previous opinion, the MCAC should have accepted that Salenbien's injury was work related when analyzing whether his injury arose out of and in the course of employment such that he would be entitled to benefits under the WDCA. By reconsidering the *Forgach* factors and adopting the original magistrate's findings, the MCAC in effect substituted itself for this Court or our Supreme Court, vacated *Salenbien I* and reinstated the commission's previous ruling.

Even if this issue were not controlled by *Salenbien I*, we would hold that the MCAC erred. This case falls into a special category in which travelling from site to site is the essence of the employee's job. In our view, *Wilhelm v Angell, Wilhelm & Shreve*, 252 Mich 648; 234 NW 433 (1931), more appropriately governs Salenbien's work situation:

> If, in the discharge of his duties, the employee is required to travel upon the highway or to use other means of transportation, and while so doing in the performance of a service to his employer, he suffers an accidental injury caused by his so traveling, he is entitled to compensation. *When engaged in this type of work, he should be protected while on the highway in the course of his duties after leaving the last point at which he rendered service regardless of whether he is then journeying to his next place of service or returning to business headquarters or to the place of his domicile.* For example, a salesman working without fixed hours of employment, whose service to his employer requires him to call upon customers in towns A, B, and C, would clearly be within the protection of the law while traveling in a manner approved by the employer upon the highway in going to town A regardless of whether he started from his home or his employer's place of business. He would likewise be protected while traveling in the course of his employment from town A to town B and on to town C. And notwithstanding the customers in town C were the last he was to call upon on the particular trip, the salesman should still be protected while traveling in the course of his employment back to the town from whence he started. There would seem to be neither reason nor justice in a contrary holding. This latter portion of his journey beyond question is just as much within the scope of his employment as the portions which preceded it. [*Id.* at 652 (emphasis added).]

Cases in which an employee's travel is integral to his employment are "fundamentally different than . . . *Forgach*." *Naski*, 2007 ACO 78, p 4. In *Naski*, for instance, the employee spent his days travelling to customers' homes to measure for the installation of cabinets and visited the office whenever convenient for him. *Id.* Mr. Naski was injured during such travel and the MCAC affirmed the magistrate's ruling in favor of coverage, expressing that "travel to

customers' homes was the primary mission of his employment, and therefore an integral part of [his] duties." *Id.* As noted in *Martin*, 2004 ACO 74, p 9, "[i]n such circumstances the ordinary hazards of travel are considered work related hazards." Accordingly, it matters not whether Salenbien was travelling between customer sites as in *Martin* and *Naski* or from a customer's location back to the office where he intended to complete work-related tasks; his travel would have been the primary mission of his employment and an integral part of his duties in either instance. The MCAC thereby committed clear legal error in denying coverage under the WDCA and we must reverse.

### III. REIMBURSEMENT TO NO-FAULT INSURER

As the MCAC erred in denying Salenbien benefits under the WDCA, it also erred in rejecting Allstate's bid for recompense for the no-fault benefits it had provided. The question now shifts to the scope of that recompense, specifically whether Allstate is entitled to reimbursement from Arrow for benefits that have been or will be reimbursed by the Michigan Catastrophic Claims Association (MCCA). Allstate, as Salenbien's no-fault insurer, was responsible for paying his PIP benefits. However, under MCL 500.3104(2)(e), the MCCA was required to reimburse Allstate for coverage provided in excess of $375,000. Following the hearing on remand, the magistrate determined that Allstate was entitled to reimbursement for those funds it had expended and not for monies paid by the MCCA. If the MCCA wanted return of the funds it had expended or would expend, the magistrate explained, it needed to intervene in the action itself.

The magistrate committed clear legal error in this regard. Pursuant to MCL 500.3104(17), the Legislature requires the MCCA to maintain a plan of operation for its administration. That plan of operation provides for its member insurers to turn over funds which they recover from third parties but that have already been reimbursed by the MCCA. Accordingly, the MCCA had no need to intervene in the action to secure recovery of the funds it had reimbursed Allstate connected to Salenbien's injuries.

As described in *American Home Assurance Co v Mich Catastrophic Claims Ass'n*, 288 Mich App 706, 718; 795 NW2d 172 (2010), the no-fault act contains no dollar limit on a no-fault insurer's liability for PIP benefits. Thus, where injuries are severe, the liability of a no-fault insurer can be enormous. *Id.* In order to protect no-fault insurers, the Legislature created the MCCA. *Id.* No-fault insurers are required to belong to the MCCA in order to issue insurance policies in this state. MCL 500.3104(1). The MCCA is not an insurer of no-fault insurers; rather, it is an indemnitor for PIP benefits paid by member insurers in excess of the statutory thresholds established in MCL 500.3104(2). *American Home Assurance*, 288 Mich App at 718. The MCCA's duty to indemnify its member insurers is triggered by different threshold amounts, which are based on the date the no-fault insurance policy was issued or renewed. *Id.* at 718-719. Pertinent to this case, MCL 500.3104(2) provides:

> The association shall provide and each member shall accept indemnification for 100% of the amount of ultimate loss sustained under [PIP] coverages in excess of the following amounts in each loss occurrence:

> * * *

(e) For a motor vehicle accident policy issued or renewed during the period July 1, 2005 to June 30, 2006, $375,000.00

The term "ultimate loss," as defined by the no-fault act, means "the actual loss amounts that a member is obligated to pay and that are paid or payable by the member . . . ." MCL 500.3104(25)(c). Here, Allstate's ultimate loss in connection with Salenbien's injuries exceeded $1.2 million.

Of relevance to this case, the no-fault act also contains a setoff provision:

Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the [PIP] benefits otherwise payable for the injury under this chapter. [MCL 500.3109(1).]

"Benefits" that are encompassed within § 3109(1) are those that serve the same purpose as no-fault benefits and are provided or are required to be provided as a result of the same accident. *Jarosz v DAIIE*, 418 Mich 565, 577; 345 NW2d 563 (1984). The purpose of no-fault benefits is to provide medical coverage for injuries sustained in a motor vehicle accident. *DeMeglio v Auto Club Ins Ass'n*, 449 Mich 33, 46; 534 NW2d 665 (1995).

Benefits that must be set off under § 3109(1) include workers' compensation benefits. *Gregory v Transamerica Ins Co*, 425 Mich 625, 631; 391 NW2d 312 (1986); *Root v Ins Co of North America*, 214 Mich App 106, 108; 542 NW2d 318 (1995). The Supreme Court has expressly stated that, pursuant to § 3109(1), the workers' compensation system is the *primary insurer* for medical expenses incurred by an employee in an automobile accident. *Gregory*, 425 Mich at 631. Accordingly, where the WDCA applies, the no-fault system is off the hook and the MCAC must allow full reimbursement.[1]

Contrary to the magistrate's conclusion, the MCCA was not required to intervene in the WDCA action. MCL 500.3109(1) does not create an automatic lien. Rather, a no-fault insurer must ascertain whether a claim for workers' compensation benefits has or will be filed, and then intervene in the workers' compensation proceeding to protect its setoff rights. *Allstate Ins Co v Sentry Ins Co of Mich*, 175 Mich App 157, 160-161; 437 NW2d 338 (1989). But the MCCA is not a no-fault insurer. *American Home Assurance*, 288 Mich App at 718. As it is the duty of no-fault insurers to protect the right of setoff, it was the duty of Allstate, not the MCCA, to intervene in the current action.

Pursuant to the MCCA plan of operation, Allstate is required to reimburse the MCCA the funds it expended once reimbursement is secured from Arrow in the WDCA action: " 'Whenever a member recovers from a third party an amount for which it has already been reimbursed by the

---

[1] It is irrelevant that the parties stipulated before the magistrate hearing on remand that Salenbien "was not paid benefits which can be coordinated." This was a legal question, not a factual issue, and the parties could not bind the tribunal in this manner. *Staff v Johnson*, 242 Mich App 521, 529, 535; 619 NW2d 57 (2000).

[MCCA], the Member shall promptly turn such recovered monies over to the [MCCA] to the extent of any reimbursement theretofore received. . . .' " *American Home Assurance*, 288 Mich App at 720-721, quoting article X, § 10.06 of the MCCA's plan of operation. Accordingly, on remand, the magistrate and MCAC must allow Allstate full reimbursement for the no-fault benefits paid to Salenbien. It will then be Allstate's duty to recompense the MCCA.

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher