# STATE OF MICHIGAN

# COURT OF APPEALS

MYRTLE FLOSSIE MOORE,

       Plaintiff-Appellant,

v

WILLIAM THOMAS SWAFFORD and COCA-
COLA REFRESHMENTS USA, INC.,

       Defendants-Appellees.

UNPUBLISHED
June 16, 2016

No. 320246
Eaton Circuit Court
LC No. 12-000969-NI

Before: BORRELLO, P.J., and KRAUSE and RIORDAN, JJ.

PER CURIAM.

In this no-fault action, plaintiff appeals as of right a January 15, 2014, trial court order granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(10). For the reasons set forth in this opinion, we reverse and remand for further proceedings consistent with this opinion.

## I. FACTS

On June 13, 2011, plaintiff was driving her vehicle when she stopped for traffic on Columbia Road in Emmett Township. Defendant William Swafford then rear-ended plaintiff's vehicle, which in turn pushed plaintiff's vehicle into the car stopped in front of her. Plaintiff's hands were on the steering wheel at the time of the accident and she thought her shoulder twisted from the force of the impact.

Plaintiff declined transport to the hospital after the accident but later went to the emergency room for shoulder pain after confirming with her insurance agent that her automobile insurance would cover the expense. At the hospital, plaintiff indicated she had been in an accident, denied prior issues with her shoulder, and her shoulder was x-rayed. There was no swelling or bruising on plaintiff's shoulder after the accident but her arm was placed in a sling and plaintiff was told to follow up with her primary care physician Dr. John Collins.

After follow up appointments with Collins, plaintiff was referred to Dr. John Morgan, an orthopedic surgeon. Morgan treated plaintiff on July 19, 2011 for shoulder pain arising from the accident. Morgan suspected that plaintiff had a torn rotator cuff. Plaintiff informed Morgan that the pain in her right shoulder was caused by the accident. The MRI of her shoulder "demonstrated a 6 millimeter gap in a portion of her rotator cuff" and it was Morgan's opinion

-1-

that she most likely also tore her rotator cuff, even though the radiologist concluded there was no evidence of a tear. Morgan treated plaintiff with cortisone injections and prescribed physical therapy. Morgan diagnosed plaintiff with rotator cuff syndrome and shoulder impingement syndrome.

Plaintiff began physical therapy in October 2011. The physical therapy was going well until "a therapist did a traction maneuver" on the shoulder that increased the pain in the shoulder "considerably[;]" it was unclear what the maneuver did to her shoulder, but Morgan doubted "that it changed the structure of the shoulder that much in terms of rotator cup lesions or other possible structure."

Morgan operated on plaintiff's right shoulder on January 23, 2012; the "rotator cuff was torn and retracted to the point that Morgan was not able to repair it." In Morgan's opinion, the injury was caused by the automobile accident. According to Morgan's medical notes, two weeks after surgery, plaintiff had a "rather good active range of motion" and plaintiff indicated she was in much less pain. However, plaintiff testified at her deposition that she did not consider the surgery successful because she still experienced pain in her shoulder. Plaintiff received injections in June, July, and August 2013 to help with the pain.

Plaintiff testified that she continued to live alone in her own home in Battle Creek following the accident. According to plaintiff, she has pain in her shoulder all of the time and she is unable to pick up items. Even though she continues to have pain, Morgan told her after the operation to "do whatever [she could] to keep the muscle working." Thus, plaintiff mowed her own lawn, cooked, cleaned her own home, and swept the floors. However, since the accident, plaintiff testified that she could not wash the walls in her home, climb a ladder, carry her own grocery or shopping bags, write checks with her right hand, or hold her "two new great grand babies." Plaintiff testified that she cannot drive her vehicle as much because it hurts her shoulder but that she still drives to the grocery store and drives her great grandson to his school. In an affidavit, Morgan averred that plaintiff was "disabled relative to the use of her dominant right shoulder and arm for at least seven (7) months" following the accident and that plaintiff's injuries "are significant and [] affected her general ability to lead her normal life."

Plaintiff filed a complaint against defendants on July 20, 2012, seeking damages for noneconomic losses under the no-fault act. MCL 500.3135(1). Defendants moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that plaintiff failed to establish that she suffered a serious impairment of a body function. Defendants produced medical evidence showing that plaintiff had a lengthy medical history, including three knee surgeries, two knee replacements, and a history of "[a]rthritis with chronic back pain, . . . cancer of the spine, osteoarthritis, . . . hiatal hernia, hypercholesteremia, hypertension, . . . renal stones, anemia, diabetes, hypothyroidism, cataracts, and . . . radiation and chemotherapy for bone cancer, colon cancer, liver cancer, and spinal cord cancer." In addition, plaintiff was also treated at the end of 2006 for neck pain that radiated into the right shoulder, which included pain in the neck and right shoulder when she moved her right shoulder.

The trial court granted defendants' motion, explaining:

There does seem to be a factual dispute as to the nature and extent of the plaintiff's injuries. The - - both the court rule and the statute provide that a person is liable for non-economic loss caused by the ownership or use of a motor vehicle if the injured person has suffered a serious impairment of a bodily, body function. Serious impairment of a body function is an objectively manifested impairment of an important body function that affects that person's general ability to lead his or her normal life. Whether an individual has suffered a serious impairment of body function is a question of law for the court to decide. If the court finds that there is no factual dispute concerning the nature and extent of the person's injuries, or there is a factual dispute concerning the nature and extent of the person's injuries but the dispute is not material to the determination of whether the person has suffered a serious impairment of bodily function or permanent serious disfigurement. And that's the statute.

And I do find there is a material factual dispute regarding the nature and extent of the plaintiff's injuries here. On one hand is the radiologist's interpretation of the MRI, which does not show and specifically says there's no evidence of a tear, and the orthopedic surgeon saying I diagnosed a tear, I did the surgery, found the tear and he has in his medical opinion related it back to the crash. So I do think there is a material, a genuine issue of material fact there regarding that.

\* \* \*

But the question is given, setting that issue aside then does the evidence in front of the court establish that she has suffered a serious impairment of an important bodily function, body function. And I keep focusing on that test. An objectively manifested impairment of an important body function that affects the person's general ability to lead her normal life.

Now, certainly a right arm is, especially for a right[-]handed person, it's an important body function. But the question is, is the legislature used the word serious. So a modest impairment of a body function or a minor impairment of a body function does not reach the threshold as a matter of law. And I looked at her own testimony and she uses her right arm to live independently. She said she was able to participate in most of her day[-]to[-]day activities. She still mows the lawn, cooks, cleans, sweeps floors; she does still drive a car and she does still watch her great grandson or grandson.

When asked whether there are things she's prevented from doing, she said no. And then pressed on that point, she said, 'Well, I - - well, I almost do now. But I mean, I can't wash walls and stuff like I, you know.'

Well, going back to the test of affecting the person's general ability to lead her normal life, the conclusion that I have to reach on this record is she is still living her normal life. She has many medical issues that are impacting her, her normal life. And even assuming in a light most favorable to her that her shoulder

injury is caused by this crash, I don't see a serious impairment of her normal life. She's able to do household chores, dress, bathe without assistance. As I said, at her age she is still living independently. I just don't see an affect caused by the crash on her general ability to lead her normal life.

And so on that basis I will grant summary disposition for the defendants.

Plaintiff appeals the court's order as of right.

## II. ANALYSIS

Plaintiff contends that the trial court erred in granting defendant's motion for summary disposition.

We review de novo a trial court's ruling on a motion for summary disposition. *Jimkoski v Shupe*, 282 Mich App 1, 4; 763 NW2d 1 (2008). Summary disposition is proper under MCR 2.116(C)(10) where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *American Home Assurance Co v Mich Catastrophic Claims Ass'n*, 288 Mich App 706, 717; 795 NW2d 172 (2010). In reviewing a motion under MCR 2.116(C)(10) a court considers "the pleadings, admissions and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008).

Under the no-fault act, "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, *serious impairment of body function*, or permanent serious disfigurement." MCL 500.3135(1) (emphasis added). In this case, plaintiff claimed her injured right shoulder amounted to a "serious impairment of body function."

In relation to a cause of action brought under MCL 500.3135(1), the no-fault act provides in relevant part:

> (a) The issues of whether the injured person has suffered serious impairment of body function or permanent serious disfigurement are questions of law for the court if the court finds either of the following:

> (*i*) There is no factual dispute concerning the nature and extent of the person's injuries.

> (*ii*) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function or permanent serious disfigurement. . . . [MCL 500.3135(2)(a).]

Under MCL 500.3135(5), the phrase "serious impairment of body function" is defined as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life."[1]  In *McCormick v Carrier*, 487 Mich 180, 194-195; 795 NW2d 517 (2010), our Supreme Court held that MCL 500.3135 requires proof of three prongs to establish a "serious impairment of body function": "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life."  A plaintiff fails to meet the serious-impairment threshold if he or she is unable to prove any one prong.  See *id.* at 195.

With regard to the third prong, the *McCormick* Court stated:

> [T]he plain text of the statute and [] [dictionary] definitions demonstrate that the common understanding of to "affect the person's ability to lead his or her normal life" is to have an influence on some of the person's capacity to live in his or her normal manner of living.  By modifying "normal life" with "his or her," the Legislature indicated that this requires a subjective, person- and fact-specific inquiry that must be decided on a case-by-case basis.  Determining the effect or influence that the impairment has had on a plaintiff's ability to lead a normal life necessarily requires a comparison of the plaintiff's life before and after the incident.

> There are several important points to note, however, with regard to this comparison.  First, the statute merely requires that a person's general ability to lead his or her normal life has been affected, not destroyed.  Thus, courts should consider not only whether the impairment has led the person to completely cease a pre-incident activity or lifestyle element, but also whether, although a person is able to lead his or her pre-incident normal life, the person's general ability to do so was nonetheless affected.

> Second, and relatedly, "general" modifies "ability," not "affect" or "normal life."  Thus, the plain language of the statute only requires that some of the person's *ability* to live in his or her normal manner of living has been affected, not that some of the person's normal manner of living has itself been affected.  Thus, while the extent to which a person's general ability to live his or her normal life is affected by an impairment is undoubtedly related to what the person's normal manner of living is, there is no quantitative minimum as to the percentage of a person's normal manner of living that must be affected.

---

[1] We note that both parties state that the phrase "serious impairment of body function" is defined in MCL 500.3135(7); the correct statutory citation is now MCL 500.3135(5).  Effective October 1, 2012, MCL 500.3135 was amended by 2012 PA 158.  As it relates to the phrase at issue in this case, the amendment did not alter the definition of "serious impairment of body function;" only the subsection designation was affected.

Third, and finally, the statute does not create an express temporal requirement as to how long an impairment must last in order to have an effect on "the person's general ability to live his or her normal life." [*Id*. at 202-203 (citations omitted).]

In this case, the trial court determined that there was a factual dispute as to the nature and extent of plaintiff's injuries. This finding was supported by the record where the findings of the radiologist and the orthopedic surgeon appeared to be at odds. The parties do not challenge that finding on appeal. After finding that there was a factual dispute as to the nature and extent of plaintiff's injuries, the court essentially held that this dispute was immaterial to the determination of whether plaintiff's alleged injury amounted to a serious impairment of a body function when it made that determination as a matter of law. See MCL 500.3135(1)(a)(*ii*). In concluding that plaintiff failed as a matter of law to establish that she suffered a serious impairment of a body function, the trial court erred. Rather, the record evidence showed that the factual dispute regarding the nature and extent of plaintiff's injury was material to the determination of whether plaintiff suffered a serious impairment of a body function and the issue therefore was a question of fact for the jury. *Id*.

Here, there was competing medical evidence regarding the nature and extent of plaintiff's shoulder injury. Although plaintiff denied that she had prior shoulder problems, defendant's medical exhibits suggested otherwise. Specifically, defendant's exhibits showed that plaintiff had a significant medical history showing multiple treatments and issues with her shoulder, back, and spine. This evidence created an issue of fact for the jury to determine regarding the nature and extent of the injury plaintiff suffered during the car accident; there were issues of fact as to whether the problems plaintiff was experiencing with her shoulder were pre-existing conditions or were caused by the accident. Critical to the determination of whether plaintiff suffered a serious impairment of body function was whether plaintiff tore her rotator cuff as a result of the accident. Morgan's medical opinion supported that plaintiff did indeed suffer a torn rotator cuff while the radiologist concluded there was no evidence of a tear. Additionally, there was evidence that plaintiff's physical therapist performed a "traction maneuver" on plaintiff's shoulder that increased her shoulder pain "considerably." While Morgan doubted that the maneuver "changed the structure of the shoulder that much in terms of rotator cup lesions or other possible structure," this left open a question of fact for the jury to decide.

Moreover, the factual dispute concerning the nature and extent of plaintiff's injury was material to determining whether she suffered a serious impairment of a body function. As noted above, to establish a serious impairment of a body function required proof of the following three prongs: "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *McCormick*, 487 Mich at 194-195. Here, the trial court found as a matter of law that plaintiff failed to establish the third prong—i.e. that her shoulder injury affected her general ability to lead her normal life. However, viewed in a light most favorable to plaintiff, there was a genuine question of material fact regarding this issue.

As noted above, there was evidence that plaintiff had numerous medical issues and ailments before the accident. However, evidence also supported that plaintiff injured her shoulder in the accident and that, under *McCormick*, the injury affected her general ability to

lead her normal life. Specifically, plaintiff testified at her deposition that since the accident she had constant pain in her shoulder, was unable to pick up items, wash the walls in her home, climb a ladder, carry her own grocery bags, carry her own shopping bags at stores, write checks with her right, dominant hand, hold her "two new grandbabies" or drive for extended periods of time. That plaintiff still lives on her own, attends to her own personal needs, and performs many of the same chores she did before the accident does not negate that she does so now with pain or that there are many activities she is unable to do. Further, plaintiff has attended medical appointments and physical therapy for more than two years since the accident, and has also dealt with injections in, and surgery on, her shoulder. This evidence supports that plaintiff's injury affected her general ability to lead her normal life. Plaintiff was not required to demonstrate that her life has been destroyed by the injury and "there is no quantitative minimum as to the percentage of a person's normal manner of living that must be affected." *McCormick*, 487 Mich at 202-203. Based on this evidence, a rational factfinder could conclude that plaintiff's ability to lead her normal life was affected.

In sum, there were genuine issues of material fact as to the nature and extent of plaintiff's injuries and as to whether those injuries amounted to a serious impairment of a body function. *Id*. Therefore, summary disposition was improper. *American Home Assurance Co*, 288 Mich App at 717.

Reversed and remanded for further proceedings consistent with this opinion. No costs are awarded. MCR 7.219(A). We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Amy Ronayne Krause